[No. B122446. Second Dist., Div. Five. Oct. 6, 1998.]

BLUE CROSS OF CALIFORNIA et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ELIZABETH FARQUHAR et al., Real Parties in Interest.

**COUNSEL**

Terrence M. King, Gerald J. Miller, Ginsburg, Stephan, Oringher & Richman and Gordon E. Bosserman for Petitioners.

No appearance for Respondent.

Ivie, McNeill & Wyatt, Barry Reed and Jay R. Taylor for Real Parties in Interest.

**OPINION**

**TURNER, P. J.—**

### I. INTRODUCTION

This original writ proceeding presents a question of first impression: whether a California court can, as authorized by state law, order classwide arbitration in a case that falls under the Federal Arbitration Act (the act). (9 U.S.C.A. § 1 et seq.) Stated differently, the issue is whether the act preempts California decisional authority authorizing classwide arbitration. The United States Supreme Court has never reached the question whether the act precludes classwide arbitration under state law. We conclude application of the California classwide arbitration rule is not preempted by the act. Accordingly, we deny the writ petition.

### II. BACKGROUND

Two named plaintiffs, Elizabeth Farquhar, and Laurie Winett, brought this class action, against Blue Cross of California and Wellpoint Health Networks, Inc. (collectively, Blue Cross). They alleged Blue Cross had "engaged in a widespread practice of selling and administering health plans which violate laws concerning preexisting condition exclusions, waiting period exclusions, waivered condition exclusions, and temporary exclusions." Blue Cross answered the complaint alleging, in part, that plaintiffs were required by contract to resolve their claims through binding arbitration.

The arbitration provision in Blue Cross's "Personal Prudent Buyer Classic and Basic Hospital Plan for Families and Individuals" stated: "Any dispute between you and Blue Cross of California and/or its affiliates must be resolved by binding arbitration, if the amount in dispute exceeds the jurisdictional limit of the Small Claims Court. Any such dispute will be resolved not by law or resort to court process, except as California law provides for judicial review of arbitration proceedings. Under this coverage, both you and Blue Cross of California and its affiliates are giving up the right to have any dispute decided in a court of law before a jury." A more extensive arbitration clause was included in Blue Cross's "Prudent Buyer Plan Service Agreement and Combined Evidence of Coverage and Disclosure Form." It stated: "PART VII BINDING ARBITRATION [¶] A. Any dispute or claim, of whatever nature, arising out of, in connection with, or in relation to this Agreement or breach thereof, or in relation to care or delivery of care, including any claim based on contract, tort or statute, must be resolved by arbitration if the amount sought exceeds the jurisdictional limit of the small claims court. [¶] B. Any

disputes regarding a claim for damages within the jurisdictional limits of the small claims court will be resolved in such court. [¶] C. The arbitration is begun by the Member making written demand on Blue Cross. The arbitration will be conducted by the American Arbitration Association according to its commercial rules of arbitration. The arbitration shall be held in the state of California. [¶] D. The Member and Blue Cross agree to be bound by the arbitration provision and acknowledge that they are giving up their right to a trial by court or jury. [¶] E. The arbitration findings will be final and binding except to the extent that California or Federal law provide for the judicial review of arbitration proceeding."

Blue Cross filed a petition in the trial court to compel arbitration of the individual plaintiffs' claims and to stay the litigation. It argued in part that the act preempted California law as to classwide arbitration. Plaintiffs opposed the petition. They did not dispute that their arbitration agreements were contained in contracts evidencing a transaction involving commerce and therefore within the purview of the act. They argued, however, that California's procedural law concerning the conduct of arbitration was not preempted by the act. The respondent court granted Blue Cross's petition to compel arbitration and to stay judicial proceedings *as to the individual plaintiffs*, but denied its motion to stay the litigation as a whole. The trial court ordered in part: "The Motion to Stay Judicial Proceedings is denied as to the class claims alleged in the Complaint. Discovery shall continue as to the class claims for purposes of a possible class certification motion and, . . . if a class is certified, the class claims will be referred to class-wide arbitration . . . ." The trial court also concluded that "[t]he arbitration provision in issue is one of adhesion, drafted by [Blue Cross]."

Blue Cross then filed the present petition for a writ of mandate, prohibition, or other appropriate relief. Blue Cross contends the act preempts California law allowing for classwide arbitration, therefore the respondent court erred in denying the motion to stay the judicial action as a whole. We issued an order to show cause why the relief prayed for in the petition should not be granted. Blue Cross has not raised any issue in its petition specifically concerning the respondent court's limited discovery order or its finding the arbitration provision was one of adhesion. We do not address those issues because they have not been raised. The sole question before us is whether the act prohibits classwide arbitration in this case.

III. Discussion

A. *Ripeness*

The parties have not raised any question as to this writ proceeding being premature and we do not conclude that it is. Blue Cross's position is

that binding arbitration of individual claims was mandated by contract and the act precludes arbitration of class claims under state law; therefore the respondent court should have stayed the *entire* litigation. Plaintiffs do not claim they are entitled to litigate the class claims in a court action. They assert only that they may arbitrate those claims. To allow discovery to proceed as to the existence of a class if classwide arbitration is not allowed would waste judicial resources and burden the parties with unnecessary expense of time and money. In addition, to defer a decision on this issue would result in "lingering uncertainty in the law." (*Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].) Therefore, whether the trial court erred in refusing to stay the litigation is an issue that is ripe for resolution. This case does not present an "abstract difference[] of legal opinion" for resolution, nor will it result in our issuing a "purely advisory opinion[]." (*Pacific Legal Foundation* v. *California Coastal Com., supra,* 33 Cal.3d at p. 170; accord, *Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225].) The present case involves concrete issues—may discovery proceed on whether there should be class certification with the potential that plaintiffs will later be joined in classwide arbitration.

## B. *The Federal Arbitration Act*

■ The parties agree that the underlying health insurance contracts evidence transactions involving commerce and therefore the arbitration provisions fall within the purview of the act. The act was enacted in 1925 (43 Stat. 883) and codified in 1947. (61 Stat. 669.) It provides in section 2 that a written arbitration provision in a contract "evidencing a transaction involving commerce . . . *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*" (9 U.S.C.A. § 2, italics added.) Section 4 of the act provides for a petition to compel arbitration in "any United States district court" and for the issuance of an order "directing the parties to proceed to arbitration *in accordance with the terms of the agreement.*" (9 U.S.C.A. § 4, italics added.)

The purpose of the act "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts." (Domke on Commercial Arbitration (rev. ed. 1997) ch. 4, Statutory Arbitration Law, § 4.04, p. 6, fn. omitted; *Allied-Bruce Terminix Cos.* v. *Dobson* (1995) 513 U.S. 265, 270-271 [115 S.Ct. 834, 837-838, 130 L.Ed.2d 753]; see *Kulukundis Shipping Co.* v. *Amtorg Trading Corp.* (2d Cir. 1942) 126 F.2d 978, 982-985 [tracing the history of the judicial attitude towards arbitration that led to the enactment of the act];

H.R.Rep. No. 96, 68th Cong., 1st Sess., p. 1 (1924); Sen.Rep. No. 536, 68th Cong., 1st Sess., p. 2 (1924).) A 1924 Senate Report described the "old law": "But it is very old law that the performance of a written agreement to arbitrate would not be enforced in equity, and that if an action at law were brought on the contract containing the agreement to arbitrate, such agreement could not be pleaded in bar of the action; nor would such an agreement be ground for a stay of the proceedings until arbitration was had. Further, the agreement was subject to revocation by either of the parties at any time before the award. With this as the state of the law, such agreements were in large part ineffectual, and the party aggrieved by the refusal of the other party to carry out the arbitration agreement was without adequate remedy. [¶] Until recently in England, and up to the present time in nearly, if not quite all, the States of the Union, such has been the law in regard to arbitration agreements. The Federal courts have in the main been governed by the same rules and, as a consequence, have denied relief to the parties seeking to compel the performance of executory agreements to settle and determine disputes by arbitration." (Sen.Rep. No. 536, 68th Cong., 1st Sess., p. 2 (1924).) A 1924 House Report explained the effect of the legislation as follows: "Arbitration agreements are purely matters of contract, and the effect of the bill is simply to make the contracting party live up to his agreement. He can no longer refuse to perform his contract when it becomes disadvantageous to him. An arbitration agreement is placed upon the same footing as other contracts, where it belongs." (H.R.Rep. No. 96, 68th Cong., 1st Sess., p. 1 (1924).)[1]

The United States Supreme Court has described the congressional purpose in adopting the act as follows: "American courts initially followed English

---

[1]Two identical bills made their way through the 68th Congress, Senate Bill No. 1005 and House Bill No. 646. During congressional debate, Senator Thomas J. Walsh of Montana, a member of the Senate Committee on the Judiciary, stated that "the bill [Senate Bill No. 1005] provides for the abolition of the rule that agreements for arbitration will not be specifically enforced." (Remarks of Sen. Walsh, 66 Cong. Rec. 984 (1924).) Congressman George S. Graham of Pennsylvania, the Chairman of the House Committee on the Judiciary, elaborated on the purpose of the legislation: "This bill [House Bill No. 646] simply provides for one thing, and that is to give an opportunity to enforce an agreement in commercial contracts and admiralty contracts—an agreement to arbitrate, when voluntarily placed in the document by the parties to it. It does not involve any new principle of law except to provide a simple method by which the parties may be brought before the court in order to give enforcement to that which they have already agreed to. It does not affect any contract that has not the agreement in it to arbitrate, and only gives the opportunity . . . of asking the parties to come in and carry through, in good faith, what they have agreed to do. It does nothing more than that. It creates no new legislation, grants no new rights, except a remedy to enforce an agreement in commercial contracts and in admiralty contracts." (Remarks of Congressman Graham, 65 Cong. Rec. 1931 (1924).) As similarly stated by Congressman Graham on another occasion, "The result of [House Bill No. 646] is that if you and I agree in the contract to arbitrate we must arbitrate and can not shirk it afterwards." (Remarks of Congressman Graham, 66 Cong. Rec. 3004 (1925).)

practice, perhaps just ' "stand[ing] . . . upon the antiquity of the rule" ' prohibiting arbitration clause enforcement, rather than ' "upon its excellence or reason." ' [Citation.] Regardless, when Congress passed the Arbitration Act in 1925, it was 'motivated, first and foremost, by a . . . desire' to change this antiarbitration rule. [Citation.] It intended courts to 'enforce [arbitration] agreements into which parties had entered,' [citation], and to 'place such agreements "upon the same footing as other contracts," ' [citation]." (*Allied-Bruce Terminix Cos.* v. *Dobson, supra,* 513 U.S. at pp. 270-271 [115 S.Ct. at p. 838].) In *Perry* v. *Thomas* (1987) 482 U.S. 483, 490 [107 S.Ct. 2520, 2526, 96 L.Ed.2d 426], the United States Supreme Court held: " '[T]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered . . . .' [Citation.]" The high court has similarly explained that the " 'primary purpose' " of the act was to ensure " 'that private agreements to arbitrate are enforced according to their terms.' " (*Mastrobuono* v. *Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 57 [115 S.Ct. 1212, 1216, 131 L.Ed.2d 76].)

### C. *The Act's Preemption of State Law*

■ The act is predicated on Congress's authority to enact substantive rules under the commerce laws. (*Allied-Bruce Terminix Cos.* v. *Dobson, supra,* 513 U.S. at p. 271 [115 S.Ct. at p. 838]; *Perry* v. *Thomas, supra,* 482 U.S. at p. 489 [107 S.Ct. at p. 2525]; *Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 11 [104 S.Ct. 852, 858, 79 L.Ed.2d 1].) The act " 'creates a body of federal substantive law' " requiring that arbitration agreements be honored. (*Southland Corp.* v. *Keating, supra,* 465 U.S. at pp. 12 & 15, fn. 9 [104 S.Ct. at pp. 859, 861]; accord, *Mitsubishi Motors* v. *Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626 [105 S.Ct. 3346, 3353-3354, 87 L.Ed.2d 444].) That federal substantive law is applicable in both state and federal courts. (*Allied-Bruce Terminix Cos.* v. *Dobson, supra,* 513 U.S. at pp. 271-272 [115 S.Ct. at pp. 838-839]; *Perry* v. *Thomas, supra,* 482 U.S. at p. 489 [107 S.Ct. at p. 2525]; *Southland Corp.* v. *Keating, supra,* 465 U.S. at p. 12 [104 S.Ct. at p. 859].)

However, the scope of federal preemption under the act is not complete. The United States Supreme Court has held: "The [act] contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. [Citation.]" (*Volt Info. Sciences* v. *Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477 [109 S.Ct. 1248, 1255, 103 L.Ed.2d 488].) Rather, state law is preempted to the extent it stands as an obstacle to contractual arbitration. As the United States Supreme Court explained in *Volt:* "[E]ven when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it

actually conflicts with federal law—that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citation.]" (*Volt Info. Sciences* v. *Leland Stanford Jr. U., supra,* 489 U.S. at p. 477 [109 S.Ct. at p. 1255].) With respect to section 2 of the act, the court has explained: "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and *withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.*" (*Southland Corp.* v. *Keating, supra,* 465 U.S. at p. 10 [104 S.Ct. at p. 858], italics added; accord, *Doctor's Associates, Inc.* v. *Casarotto* (1996) 517 U.S. 681, 684-685 [116 S.Ct. 1652, 1654-1655, 134 L.Ed.2d 902].) As stated in *Perry* v. *Thomas, supra,* 482 U.S. at page 489 [107 S.Ct. at page 2525]: " 'Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' "

 The United States Supreme Court has further delineated the preemptive scope of the act in a series of decisions. As noted above, section 2 of the act places arbitration agreements on an equal footing with contracts generally. (*Allied-Bruce Terminix Cos.* v. *Dobson, supra,* 513 U.S. at pp. 270-271 [115 S.Ct. at pp. 837-838]; *Doctor's Associates, Inc.* v. *Casarotto, supra,* 517 U.S. at pp. 684-685 [116 S.Ct. at pp. 1654-1655].) In view of that purpose, the Supreme Court has held: "Thus, generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2. [Citations.]" (*Doctor's Associates, Inc.* v. *Casarotto, supra,* 517 U.S. at p. 687 [116 S.Ct. at p. 1656].) However, a state law that invalidates the express terms of an arbitration agreement is preempted by the act. For example, the Supreme Court has held, "[I]f contracting parties agree to *include* claims for punitive damages within the issues to be arbitrated, the [act] ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration." (*Mastrobuono* v. *Shearson Lehman Hutton, Inc., supra,* 514 U.S. at p. 58 [115 S.Ct. at p. 1216], original italics.) Further, a court may not invalidate an arbitration agreement under a state law that conditions enforceability of the agreement on compliance with special rules not applicable to contracts generally. (*Doctor's Associates, Inc.* v. *Casarotto, supra,* 517 U.S. at p. 687 [116 S.Ct. at p. 1656].) Any such rule is preempted by the act. (*Ibid.*) Also, a state law requiring judicial consideration of a claim contrary to the parties' agreement to arbitrate that claim directly conflicts with the act and violates the supremacy clause. (*Perry* v. *Thomas, supra,* 482 U.S. at p. 491 [107 S.Ct. at p. 2526] [the act preempted California statute providing that court actions for collection of wages may be maintained without regard to the existence of any private agreement to

arbitrate]; *Southland Corp.* v. *Keating, supra,* 465 U.S. at p. 16 [104 S.Ct. at p. 861] [the act preempted California statute requiring judicial consideration of franchise investment law claims even though the parties had agreed to arbitrate the claim].) In short, the act preempts state antiarbitration law so as to prevent state and federal courts from reaching different results about the validity and enforceability of arbitration agreements in similar cases. (*Allied-Bruce Terminix Cos.* v. *Dobson, supra,* 513 U.S. at pp. 271-272 [115 S.Ct. at pp. 838-839].)

### D. *California Decisional Authority Authorizes Classwide Arbitration*

Under California decisional authority, classwide arbitration is permissible. (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 608-614 [183 Cal.Rptr. 360, 645 P.2d 1192], revd. other grounds in *Southland Corp.* v. *Keating, supra,* 465 U.S. at p. 16 [104 S.Ct. at p. 861]; *Izzi* v. *Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318-1322 [231 Cal.Rptr. 315].)[2] In *Keating* v. *Superior Court, supra,* 31 Cal.3d at pages 608-614, the California Supreme Court considered whether a trial court could order classwide arbitration under adhesive but enforceable franchise contracts. The court first noted the "importance of the class action device for vindicating rights asserted by large groups of persons." (*Id.* at p. 609.) The court then reasoned: "If the right to a classwide proceeding could be automatically eliminated in relationships governed by adhesion contracts through the inclusion of a provision for arbitration, the potential for undercutting these class action principles, and for chilling the effective protection of interests common to a group, would be substantial." (*Ibid.*) The Supreme Court rejected the option of requiring each individual franchisee to arbitrate its claims as "resulting in needless duplication and the potential for inconsistent awards." (*Ibid.*) The Supreme Court identified a different problem which justified the use of classwide arbitration as follows: "It is common knowledge that arbitration clauses frequently appear in standardized contracts of adhesion. A primary consideration which has led courts to uphold such clauses, despite the adhesive nature of the contract, is the belief that arbitration is not oppressive and does not defeat the reasonable expectations of the parties. (*Madden* v. *Kaiser Foundation Hospitals* [(1976)] 17 Cal.3d 699, 710, 712 [131 Cal.Rptr. 882, 552 P.2d 1178].) If, however, an arbitration clause may be used to insulate the drafter of an adhesive contract from any form of class proceeding, effectively foreclosing many individual claims, it may well be oppressive and may defeat the expectations of the nondrafting

---

[2]We adopt the term "classwide" arbitration as used by the California Supreme Court in *Keating,* rather than the equally descriptive phrases "class arbitration" or "class action arbitration."

party. [¶] One possible solution to this dilemma would be to hold that arbitration agreements contained in contracts of adhesion may not operate to stay properly maintainable class actions. [Citations.]" (*Id.* at p. 610.)

The California Supreme Court then turned to the question whether consolidation of the arbitration proceedings should be allowed. The court cited federal authority for consolidation of arbitration proceedings by reliance on rule 42(a) of the Federal Rules of Civil Procedure (28 U.S.C.). It concluded that by analogy, rule 23 of the Federal Rules of Civil Procedure, the class action provision, would provide a basis for ordering classwide arbitrations in federal court.[3] The California Supreme Court further noted that other state courts had allowed consolidation of arbitration proceedings even in the absence of statutory authority. Further, in California, consolidated arbitration was authorized by section 1281.3 of the Code of Civil Procedure. The court observed that Code of Civil Procedure section 1281.3 authorized consolidated arbitration even when the arbitration agreements involved provide for different procedures or methods of selecting arbitrators; the statute provides for court resolution of any such conflicts. (*Keating* v. *Superior Court, supra,* 31 Cal.3d at p. 612; see Code Civ. Proc., § 1281.3, subd. (3).) In *Keating*, the Supreme Court described the potential situation confronting parties in consolidated arbitrations as follows: "Each contract may provide a different procedure for arbitration, or a different method of selecting the arbitrator. Federal courts have held that a court 'can mold the method of selection and the number of arbitrators to implement the consolidated proceedings.' (*Matter of Czarnikow-Rionda Co., Inc.* [(S.D.N.Y. 1981) 512 F.Supp. 1308,] 1309.) Similarly, Code of Civil Procedure section 1281.3 provides that consolidated arbitration proceedings may be ordered inter alia, where 'one party is a party to a separate arbitration agreement or proceeding with a third party,' and that if the agreements do not mesh in their description of procedure, a court has authority to appoint an arbitrator, and to 'resolve [conflicts among the agreements] and determine the rights and duties of the various parties to achieve substantial justice under all the circumstances.' Thus, a party may be forced into a coordinated arbitration proceeding in a dispute with a party with whom he has no agreement, before an arbitrator he had no voice in selecting and by a procedure he did not agree to." (31 Cal.3d at p. 612.) The *Keating* court then contrasted the situation in a classwide arbitration as follows: "In these respects, an order for classwide arbitration in an adhesion context would call for considerably less intrusion upon the contractual aspects of the relationship. The members of a class subject to

---

[3]Notably, the cases cited in *Keating* that relied on the federal rules in ordering consolidated arbitration were later disapproved or called into doubt in *Government of United Kingdom* v. *Boeing Co.* (2d Cir. 1993) 998 F.2d 68, 71, 74.)

classwide arbitration would all be parties to an agreement with the party against whom their claim is asserted; each of those agreements would contain substantially the same arbitration provision; and if any of the members of the class were dissatisfied with the class representative, or with the choice of arbitrator, or for any other reason would prefer to arbitrate on their own, they would be free to opt out and do so. Moreover, the interests of justice that would be served by ordering classwide arbitration are likely to be even more substantial in some cases than the interests that are thought to justify consolidation." (*Ibid.*)

The California Supreme Court concluded that "a court is not without authority" to order classwide arbitration. (*Keating* v. *Superior Court, supra,* 31 Cal.3d at p. 613.) It held that a trial court may, in its discretion, and upon consideration of specified factors, order arbitration on a classwide basis. (*Ibid.*) The California Supreme Court explained the factors to be considered as follows: "Classwide arbitration . . . must be evaluated, not in relation to some ideal but in relation to its alternatives. If the alternative in a case of this sort is to force hundreds of individual franchisees each to litigate its cause with Southland in a separate arbitral forum, then the prospect of classwide arbitration, for all its difficulties, may offer a better, more efficient, and fairer solution. Where that is so, and gross unfairness would result from the denial of opportunity to proceed on a classwide basis, then an order structuring arbitration on that basis would be justified. [¶] Whether such an order would be justified in a case of this sort is a question appropriately left to the discretion of the trial court. In making that determination, the trial court would be called upon to consider, not only the factors normally relevant to class certification, but the special characteristics of arbitration as well, including the impact upon an arbitration proceeding of whatever court supervision might be required, and the availability of consolidation as an alternative means of assuring fairness." (*Ibid.*) The court recognized that classwide arbitration would require a greater degree of judicial involvement than is normally associated with arbitration. Evaluated in relation to the alternatives, however, the Supreme Court concluded that "classwide arbitration, for all its difficulties, may offer a better, more efficient, and fairer solution." (*Ibid.*)

The California Supreme Court remanded *Keating* to the trial court for a determination "as to whether the interests of justice require that the order to arbitrate be conditioned upon Southland's acceptance of classwide arbitration." (31 Cal.3d at p. 591.) The California Supreme Court held: "Whether classwide proceedings would prejudice the legitimate interests of the party which drafted the adhesion agreement must also be considered, and that

party should be given the option of remaining in court rather than submitting to classwide arbitration." (*Id.* at pp. 613-614.) No issue has been raised in this extraordinary writ proceeding with respect to that aspect of the *Keating* decision.[4]

Although *Keating* involved arbitration agreements within the purview of the act, the defendant did not contend, nor did the California Supreme Court decide, whether classwide arbitration was preempted by federal law. (See *Southland Corp.* v. *Keating, supra,* 465 U.S. at pp. 8-9 [104 S.Ct. at pp. 857-858].) Upon review of *Keating,* the United States Supreme Court noted that the question whether classwide arbitration was contrary to the act was neither raised nor decided in the California Supreme Court. Hence, the United States Supreme Court held, it was without jurisdiction to resolve the question as a matter of federal law. (*Id.* at p. 9 [104 S.Ct. at pp. 857-858].)

Following the United States Supreme Court's decision in *Keating,* the California Court of Appeal applied this state's Supreme Court's decision in *Keating* in a case within the ambit of the act. In *Lewis* v. *Prudential-Bache Securities, Inc.* (1986) 179 Cal.App.3d 935, 938, 945-946 [225 Cal.Rptr. 69], relying on *Keating* v. *Superior Court, supra,* 31 Cal.3d at page 613, the Court of Appeal reversed an order denying a petition to compel arbitration of a class action complaint where the arbitration agreements fell under the act. The court noted that the United States Supreme Court had remanded *Keating* without deciding whether the act precluded classwide arbitration. It did not otherwise discuss the federal preemption question.[5]

---

[4]The respondent court has not yet certified the class or even finally determined whether plaintiff's claims may proceed on a classwide basis. Any discussion on our part as to whether plaintiffs' claims should actually proceed on a classwide basis would be premature. The only issue before us is whether the respondent court could order discovery on the class certification issue. Blue Cross contends the act preempts any possibility of classwide certification and possible arbitration of plaintiffs' claims in such a forum.

[5]The Pennsylvania Superior Court agreed with *Keating* in *Dickler* v. *Shearson Lehman Hutton* (1991) 408 Pa.Super. 286 [596 A.2d 860, 862-863], appeal denied (1992) 408 Pa.Super. 286 [616 A.2d 984]. The arbitration provisions at issue in *Dickler* were contained in securities industry client agreements and therefore fell under the act. They contained no express provision whether class arbitration was intended or considered. The Pennsylvania court noted the United States Supreme Court had not ruled on the propriety of classwide arbitration in *Southland Corp.* v. *Keating, supra,* 465 U.S. at pages 8-9 [104 S.Ct. at pages 857-858]. (*Dickler* v. *Shearson Lehman Hutton, supra,* 596 A.2d at pp. 862-863.) The Pennsylvania court held: "Given the three paths down which this litigation can be directed—compelled individual arbitration, class action in a court of law, or compelled classwide arbitration—the last choice best serves the dual interest of respecting and advancing contractually agreed upon arbitration agreements while allowing individuals who believe they have been wronged to have an economically feasible route to get injunctive relief from large institutions employing adhesion contracts. [¶] The availability of class suits in arbitration proceedings precludes either party from forcing the other to litigate in a position less

Also subsequent to our Supreme Court's decision in *Keating,* the Court of Appeal in *Garden Grove Community Church* v. *Pittsburgh-Des Moines Steel Co.* (1983) 140 Cal.App.3d 251, 262 [191 Cal.Rptr. 15], considered whether Code of Civil Procedure section 1281.3, authorizing consolidated arbitration, was preempted by the act. The court held it was not. (140 Cal.App.3d at p. 262.) It stated simply: "We see no conflict between the means the Legislature has chosen to effect this policy [favoring consolidating arbitrations]—giving the trial court discretion to order consolidated arbitration—and the federal scheme of regulation embodied in the [act]." (*Ibid.*)

### E. *Lower Federal Court Decisions*

 In construing and applying the act, we are bound to follow opinions of the United States Supreme Court. (U.S. Const., art. VI, cl. 2; *Rohr Aircraft Corp.* v. *County of San Diego* (1959) 51 Cal.2d 759, 764-765 [336 P.2d 521], revd. on other grounds (1960) 362 U.S. 628, 636 [80 S.Ct. 1050, 1054-1055, 4 L.Ed.2d 1002] [federal Reconstruction Finance Corporation Act]; *Stock* v. *Plunkett* (1919) 181 Cal. 193, 194-195 [183 P. 657] [federal statute with reference to location of mining claims]; *Garcia* v. *Superior Court* (1996) 42 Cal.App.4th 177, 180 [49 Cal.Rptr.2d 580] [federal Civil Rights Act]; *Gervase* v. *Superior Court* (1995) 31 Cal.App.4th 1218, 1228-1229 [37 Cal.Rptr.2d 875] [federal Racketeer Influenced and Corrupt Organizations Act]; *Elliott* v. *Albright* (1989) 209 Cal.App.3d 1028, 1034 [257 Cal.Rptr. 762] [the act].) As noted above, however, the United States Supreme Court has never reached the question whether the act precludes classwide arbitration under state law. Further, we are not bound by lower federal court decisions construing the act. (*Ibid.*)

 Blue Cross argues we should adopt a United States Court of Appeals decision which barred classwide arbitration in the federal district courts absent an express agreement to arbitrate class claims. The United States Court of Appeals for the Seventh Circuit has held "that absent a

---

advantageous than that for which they contracted. Allowing the suit to proceed through the court would defeat the purpose of the arbitration agreement, allowing plaintiffs to escape obligated arbitration in order to be heard in the sympathetic province of a jury trial. Future litigants might feel encouraged to join classes together for this single purpose when they otherwise would have been satisfied with individually litigating their claim. [¶] Compelling individual arbitration would force individuals already straitjacket[ed] by an industry-wide practice of arbitration agreements to fight alleged improprieties at an exorbitant economic cost. Individual arbitration would be small deterrent to companies certain that few proceedings will be instituted against them. Because the principles of *res judicata* and collateral estoppel are not applicable to arbitration proceedings, each plaintiff would be forced to fully litigate his complaint. [¶] . . . Fairness mandates . . . that the Dickler Group, bound by adhesion form contracts to arbitration agreements, be able to protect their interests by proceeding as a class through arbitration." (*Id.* at p. 867, original italics.)

provision in the parties' arbitration agreement providing for class treatment of disputes, a [*United States*] *district court* has no authority [*under federal law*] to certify classwide arbitration." (*Champ* v. *Siegel Trading Co., Inc.* (7th Cir. 1995) 55 F.3d 269, 271, italics added; accord, *Randolph* v. *Green Tree Financial Corp.* (M.D.Ala. 1997) 991 F. Supp. 1410, 1423-1424; *Howard* v. *Klynveld Peat Marwick Goerdeler* (S.D.N.Y. 1997) 977 F.Supp. 654, 665, fn. 7; *Gammaro* v. *Thorp Consumer Discount Co.* (D.Minn. 1993) 828 F.Supp. 673, 674.) The *Champ* court reasoned as follows: Under section 4 of the act, a federal district court is required to enforce arbitration agreements " 'in accordance with the terms of the agreement.' 9 U.S.C. § 4"; there was nothing in the written arbitration agreements expressly providing for class-wide arbitration; the act is silent on the issue of classwide arbitration; several other circuit courts had held that absent an express provision in the parties arbitration agreement, section 4 of the act barred a district court judge or magistrate from applying the FRCP to *consolidate* arbitrations; and "[f]or a federal court to read [a classwide arbitration] term into the parties' agree-ment would 'disrupt[] the negotiated risk/benefit allocation and direct[] [the parties] to proceed with a different sort of arbitration.' " (*Champ* v. *Siegel Trading Co., Inc., supra,* 55 F.3d at pp. 274-277.) The *Champ* decision adopted the reasoning of other circuit Courts of Appeal with respect to consolidation of arbitrations—that absent an agreement to the contrary, section 4 of the act precludes a federal district judge or magistrate from ordering consolidation in the arbitration setting. (*Government of United Kingdom* v. *Boeing Co., supra,* 998 F.2d 68, 74; *Del E. Webb Const.* v. *Richardson Hosp. Authority* (5th Cir. 1987) 823 F.2d 145, 150; *American Centennial Ins.* v. *National Cas. Co.* (6th Cir. 1991) 951 F.2d 107, 108; *Baesler* v. *Continental Grain Co.* (8th Cir. 1990) 900 F.2d 1193, 1195; *Weyerhaeuser Co.* v. *Western Seas Shipping Co.* (9th Cir. 1984) 743 F.2d 635, 637; *Protective Life Ins.* v. *Lincoln Nat. Life Ins.* (11th Cir. 1989) 873 F.2d 281, 282; see Consolidation by Federal Court of Arbitration Proceed-ings Brought Under Federal Arbitration Act (9 USCS § 4) (1991) 104 A.L.R.Fed. 251.)

In *Champ* it was argued that federal class action rules applied to an arbitration subject to the act. Rule 23 of the Federal Rules of Civil Procedure authorized class actions. Rule 81(a)(3) of the Federal Rules of Civil Proce-dure provided that the civil rules applied to proceeding under the act "only to the extent that matters of procedure are not provided for in those statutes." Hence, it was contended that classwide arbitration could be ordered. The Seventh Circuit panel rejected that argument as follows: "First of all, Rule 81(a)(3) says that the Federal Rules fill in only those procedural gaps left open by the [act.] But as explained above, section 4 of [the act] requires that we enforce an arbitration agreement according to its terms. Such terms conceivably could consist of consolidated or even class arbitration. The parties here did not include in their agreement an express term providing for

class arbitration. Thus, one could say that through the proper application of 9 U.S.C. § 4 the [act] has already provided the type of procedure to be followed in this case, namely, non-class-action arbitration. [Citations.] [¶] But more to the point, we still could not accept the intervenors' assertions because by its language Rule 81(a)(3) only applies to *judicial* proceedings under the [act.] [Citations.] . . . [N]othing in the language of Rule 81(a)(3) purports to apply the Federal Rules of Procedure to the actual proceedings on the merits before the arbitrators, which are normally regulated by the American Arbitration Association's Commercial Arbitration Rules. [Citation.] As the Fourth Circuit has explained it: '[a]n arbitration hearing is not a court of law. When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial.' *Burton v. Bush,* 614 F.2d 389, 390 (4th Cir. 1980) [citations]. One of those 'procedural niceties' is the possibility of pursuing a class action under Rule 23. Therefore, absent an express provision in the parties' arbitration agreement providing for class arbitration, Rule 81(a)(3) does not provide a district court with the authority to reform the parties' agreement and order the arbitration panel to hear these claims on a class basis pursuant to Rule 23." (*Champ* v. *Siegel Trading Co., Inc., supra,* 55 F.3d at pp. 276-277, fn. omitted, original italics.)

In contrast to *Champ,* the United States Court of Appeals, First Circuit has held a district court *does* have the power to order *consolidated* arbitration where the agreement is silent as to consolidation, but *state law* specifically provides for such procedure. In *New England Energy Inc.* v. *Keystone Shipping Co.* (1st Cir. 1988) 855 F.2d 1, 3, the First Circuit held there was "no compulsion of law or policy barring a district court from issuing [an order consolidating two arbitrations], at least when the agreement between the parties is silent and the pertinent state law specifically provides for such." That court reasoned: The act does not preempt all state law on arbitration, "only laws that would override the parties' choice to arbitrate rather than litigate in court, in direct conflict with the Act's primary purpose of ensuring the enforcement of privately negotiated arbitration agreements" (*id.* at p. 4); the particular state statute at issue, the Massachusetts arbitration consolidation provision, did not directly conflict with the act which says nothing about consolidation; and ordering consolidation, where the parties' contracts were silent on the subject, would not conflict with section four of the act, requiring that courts enforce arbitration agreements according to their terms; and this was because such an order would be in accordance with, rather than contradicting, the contractual terms. (*Id.* at p. 5). On the last point, the court stated as follows: "Appellee's argument . . . is not that the Act directly contradicts the Massachusetts statute, but that the state law is

superseded in this case because the parties' contracts do not provide for consolidation, and an order to consolidate would therefore conflict with the requirement in section four of the federal Act that courts enforce arbitration agreements according to their terms. [¶] We disagree that ordering consolidation pursuant to a state statute when the contract is silent on the subject improperly modifies the agreement struck by the parties in violation of section four. We believe, as appellants argue, that an order not contradicting the contractual terms regarding arbitration is 'in accordance with [those] terms.' . . . Simply put, arbitration is still arbitration even if it is consolidated arbitration." (*Ibid.*)

The *New England Energy* case further reasoned that the relevant United States Supreme Court decisions directed the preemptive effect of the act at preventing the diversion of cases from arbitration. The court stated: "More particularly, nothing in the recent series of Supreme Court decisions indicates that a state law whose purpose is to promote the expeditious resolution of cases *by means of the arbitral process* is at odds with the policy behind the Federal Arbitration Act. In each of the cases emphasized by the appellee, the justices were faced with competing laws that would have placed claims in the courts instead of in arbitration. Two of those cases involved state law. In *Southland,* the California Supreme Court held that a state franchise investment statute invalidated the parties' agreement to arbitrate certain claims. Similarly, in *Perry,* the California Supreme Court had upheld a state labor law requirement that litigants be provided a judicial forum for resolving wage disputes, despite the existence of a private agreement to arbitrate such disputes. In holding the state laws to be preempted in *Southland* and *Perry,* the Supreme Court observed that '[w]e see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law.' [Citations.] [¶] The Massachusetts arbitration consolidation provision, as appellants seek to enforce it, does not in any way limit 'the broad principle of enforceability' of private agreements to arbitrate. There is no attempt here to divert a case from arbitration to court. Massachusetts seeks only to make more efficient the process of arbitrating. Although the Supreme Court has held that agreements to arbitrate must be enforced 'even if the result is "piecemeal" litigation,' [citation], the Court also has recognized the Act's endorsement of 'speedy and efficient decisionmaking,' [citation]. We fail to see why a state should be prevented from enhancing the efficiency of the arbitral process, so long as the state procedure does not directly conflict with a contractual provision." (*New England Energy Inc.* v. *Keystone Shipping Co., supra,* 855 F.2d at pp. 6-7, original italics.)[6]

We decline to apply the Seventh Circuit decision in *Champs* to this case. As discussed below, we conclude section 4 of the act does not preclude

---

[6]Notably, Blue Cross conceded at oral argument that consolidated arbitration as authorized by Code of Civil Procedure section 1281.3 would be allowed in a case within the purview of

application of the California classwide arbitration rule. Further, we believe the First Circuit *New England Energy* decision is both analogous to our facts and better reasoned. We conclude that when the arbitration agreement between the parties is silent as to classwide arbitration and state law specifically authorizes it in appropriate cases, an order compelling classwide arbitration neither contradicts the contractual terms nor contravenes the policy behind the act.

F. *Section 4 of the Act Does Not Preclude Application of the California Classwide Arbitration Rule*

■ As discussed above, the reasoning of the federal circuit court decisions on classwide and consolidated arbitrations turns on section 4 of the act. Significantly, the United States Supreme Court has repeatedly indicated that sections 3 and 4 of the act *do not apply in state courts.* In *Southland Corp.* v. *Keating, supra,* 465 U.S. at page 16, footnote 10 [104 S.Ct. at page 861], the court stated: "In holding that the Arbitration Act preempts a state law that withdraws the power to enforce arbitration agreements, we do not hold that §§ 3 and 4 of the Arbitration Act apply to proceedings in state courts. Section 4, for example, provides that the Federal Rules of Civil Procedure apply in proceedings to compel arbitration. The Federal Rules do not apply in such state court proceedings." In *Volt Info. Sciences* v. *Leland Stanford Jr. U., supra,* 489 U.S. at pages 476-477 [109 S.Ct. at pages 1254-1255], the United States Supreme Court described an argument that sections 3 and 4 of the act were not applicable in state courts as "not without some merit," but unnecessary to reach in that case. Significantly, however, the opinion contains the following discussion: "While we have held that the [act's] 'substantive' provisions—§§ 1 and 2—are applicable in state as well as federal court, [citation], we have never held that §§ 3 and 4, which by their terms appear to apply only to proceedings in federal court, see 9 U.S.C. § 3 (referring to proceedings 'brought in any of the courts of the United States'); § 4 (referring to 'any United States district court'), are nonetheless applicable in state court. See *Southland Corp.* v. *Keating, supra,* at 16, n. 10 (expressly reserving the question whether '§§ 3 and 4 of the Arbitration Act apply to proceedings in state courts'); see also *id.,* at 29 (O'CONNOR, J., dissenting) (§§ 3 and 4 of the [act] apply only in federal court)." (*Volt Info.*

the act. (See *Garden Grove Community Church* v. *Pittsburgh-Des Moines Steel Co., supra,* 140 Cal.App.3d at p. 262 [Code of Civil Procedure section 1281.3 not preempted by the act].) It attempted to distinguish consolidated and classwide arbitration on the grounds the *Keating* rule was nonstatutory, while consolidation is authorized by statute in this state. We conclude the purported distinction is one without a difference. The federal preemption analysis is the same whether the state rule is statutory, regulatory, or judicially declared. (*Securities Industry Ass'n.* v. *Connolly* (1st Cir. 1989) 883 F.2d 1114, 1120, fn. 4; *Chase* v. *Blue Cross of California* (1996) 42 Cal.App.4th 1142, 1161, fn. 16 [50 Cal.Rptr.2d 178].)

*Sciences* v. *Leland Stanford Jr. U., supra,* 489 U.S. at p. 477, fn. 6 [109 S.Ct. at p. 1254].) Further, we have reviewed the legislative history of the act and have not found anything therein that would support a conclusion Congress intended section 4 of the act to apply to the states.

Moreover, in *Rosenthal* v. *Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 405-410 [58 Cal.Rptr.2d 875, 926 P.2d 1061], the California Supreme Court held the federal provision for a jury trial as to the existence of an arbitration agreement contained in section 4 of the act did not operate in California courts.[7] Our Supreme Court examined the language of section 4 of the act. It held section 4 of the act "does not explicitly govern the procedures to be used in state courts." (14 Cal.4th at p. 407.) Section 4 of the act "contemplates a petition in 'United States district court,' and provides that certain steps are to be taken 'in the manner provided by the Federal Rules of Civil Procedure.' " (14 Cal.4th at p. 407) The *Rosenthal* court further considered principles of federal preemption. It concluded that "a state procedural statute or rule that frustrated the effectuation of section 2's central policy would, where the federal law applied, be preempted by the [act]" (*id.* at p. 408); however, a state procedure that serves to further, rather than defeat, "full and uniform effectuation of the federal law's objectives"—to ensure that arbitration agreements are enforced according to their terms—is to be followed in California, rather than section 4 of the act. (14 Cal.4th p. 410.) The *Rosenthal* court noted: "It is a 'general and unassailable proposition . . . that States may establish the rules of procedure governing litigation in their own courts,' even when the controversy is governed[, as here,] by substantive federal law. (*Felder* v. *Casey* (1988) 487 U.S. 131, 138 . . . .) 'By the same token, however, where state courts entertain a federally created cause of action, the "federal right cannot be defeated by the forms of local practice." ' " (*Id.* at p. 409.) More specifically the court stated: "Uniform national application of a federal substantive law requires, in particular, that state courts not apply procedural rules that would 'frequently and predictably produce different outcomes . . . based solely on whether the [federal] claim is asserted in state or federal court.' ([*Felder* v. *Casey, supra,* 487 U.S. at p. 138].)" (*Ibid.*) The California Supreme Court concluded: "Like other federal procedural rules, therefore, 'the procedural provisions of the [act] are not binding on state courts . . . *provided applicable state procedures do not defeat the rights granted by Congress.*' [Citation.]"; and "[b]ecause the California procedure for deciding motions to compel

[7]Section 4 of the act provides in part: "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . . Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose."

[arbitration] serves to further, rather than defeat, full and uniform effectuation of the federal law's objectives, the California law, rather than section 4 of the [act], is to be followed in California courts." (*Id.* at pp. 409, 410, original italics.)

The United States Supreme Court's decision in *Volt Info. Sciences* v. *Leland Stanford Jr. U., supra,* 489 U.S. at pages 470 and 476 [109 S.Ct. at pages 1251 and 1254], indirectly supports our resolution of the present case. At issue in *Volt* was California Code of Civil Procedure section 1281.2, subdivision (c), which allows a court to stay arbitration pending resolution of related litigation. The contract at issue in *Volt* contained a choice of law provision which stated, " '[T]he Contract shall be governed by the law of the place where the Project is located.' " (489 U.S. at p. 470 [109 S.Ct. at p. 1251].) This state's Court of Appeal had interpreted the choice of law provision as an agreement to apply the state rules governing the conduct of arbitration. The United States Supreme Court found no basis for interfering with the state court's interpretation. The court held "that application of the California statute is not pre-empted by the [act] in a case where the parties have agreed that their arbitration agreement will be governed by the law of California." (*Volt Info. Sciences* v. *Leland Stanford Jr. U., supra,* 489 U.S. at p. 470 [109 S.Ct. at p. 1251].) Of particular relevance to the present case, the court stated: "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." (*Id.* at p. 476 [109 S.Ct. at p. 1254].) Further, the United States Supreme Court held: "[The act] itself contains no provision designed to deal with the special practical problems that arise in multiparty contractual disputes when some or all of the contracts at issue include agreements to arbitrate. California has taken the lead in fashioning a legislative response to this problem, by giving courts authority to consolidate or stay arbitration proceedings in these situations in order to minimize the potential for contradictory judgments. [Citation.]" (*Id.* at p. 476, fn. 5 [109 S.Ct. at p. 1254].) We find persuasive the United States Supreme Court's discussion in *Volt* of the preemptive effect of the act as to state procedural rules.[8]

We conclude that section 4 does not bar state courts from ordering classwide arbitration. Therefore, it does not operate to preclude classwide

---

[8]Plaintiffs have belatedly asserted, at oral argument and in a letter brief, that a choice of law provision in the underlying health insuring contracts constituted an express agreement to apply California's arbitration rules, therefore, under *Volt,* the act has no preemptive effect. Blue Cross's "Prudent Buyer Plan Service Agreement and Combined Evidence of Coverage and Disclosure Form" contained the following choice of law provision: "PART V GENERAL PROVISIONS [¶] . . . F. Governing Law: . . . This Agreement shall be construed and enforced in accordance with the laws of the State of California." The choice of law provision and its purported effect was not raised in the trial court. (Nor was it raised in the return to the present writ petition.) This court will not consider arguments raised for the first time in a writ

arbitration under California decisional authority. Further, the California rule allowing classwide arbitration, like the statute at issue in *Rosenthal*, can further rather than defeat the act's goal of enforcing agreements to arbitrate. Therefore, California's rule permitting classwide arbitration is not preempted by section 4.

Blue Cross contends it is federal substantive law, which this court is bound to follow, that no classwide arbitration can be compelled unless the parties have expressly agreed to such procedure. We disagree. First, as discussed above, we conclude section 4 of the act does not apply in state courts to bar in all cases classwide arbitration. Second, even if it did apply, the United States Supreme Court has never held that the language of section 4 of the act providing for the issuance of a district court order "directing the parties to proceed to arbitration *in accordance with the terms of the agreement*" (9 U.S.C. § 4, italics added), means that no classwide arbitration can occur unless the parties have expressly so provided. The legislative history of the act and the decisions of the United States Supreme Court make clear that the act's preemptive scope is limited. Its purpose was to abolish antiarbitration laws and to make agreements to arbitrate specifically enforceable. Consistent with that purpose, we believe the language "in accordance with the terms of the agreement" (9 U.S.C. § 4) means in accordance with the agreement to arbitrate. Third, under federal law, as articulated in *Champ* and the cases on which the Seventh Circuit relied, there is no authority for classwide arbitration. Under those circumstances, the *Champ* court refused

petition. (Cf., e.g., *People* v. *Rodrigues* (1994) 8 Cal.4th 1060, 1119 [36 Cal.Rptr.2d 235, 885 P.2d 1]; *People* v. *Garceau* (1993) 6 Cal.4th 140, 173 [24 Cal.Rptr.2d 664, 862 P.2d 664]; *People* v. *McPeters* (1992) 2 Cal.4th 1148, 1174 [9 Cal.Rptr.2d 834, 832 P.2d 146]; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138 [275 Cal.Rptr. 797, 800 P.2d 1227]; *Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051, 1065-1066 [232 Cal.Rptr. 528, 728 P.2d 1163]; *Estate of Leslie* (1984) 37 Cal.3d 186, 202 [207 Cal.Rptr. 561, 689 P.2d 133].) Even if the issue were properly before us, we would not find it persuasive. *Volt* does not stand for the proposition a general choice of law provision evidences in all cases an express intent to incorporate a state's arbitration rules into an arbitration agreement. (*Mastrobuono* v. *Shearson Lehman Hutton, Inc., supra,* 514 U.S. at pp. 58-64 & fn. 4 [115 S.Ct. at pp. 1216-1219].) In *Volt,* the United States Supreme Court accepted this state court's interpretation of the choice of law provision as meaning that the parties had incorporated California arbitration rules into their arbitration agreement. (*Volt Info. Sciences, Inc.* v. *Leland Stanford Jr. U., supra,* 489 U.S. at pp. 474-476 [109 S.Ct. at pp. 1253-1254].) The high court's decision in *Volt* therefore rested on the assumption the parties had incorporated California rules of arbitration into their arbitration agreement. (*Id.* at p. 476 [109 S.Ct. at p. 1254].) *Volt* held only that the act does not prevent the enforcement of agreements to arbitrate under state rules. (*Id.* at pp. 478-479 [109 S.Ct. at pp. 1255-1256].) There has been no finding in the present case that the parties expressly agreed to incorporate California's arbitration rules into their agreements. Contrary to plaintiffs' assertion, *Volt* does not compel this court to conclude that by virtue of the choice of law provision in the underlying health insuring agreements the parties agreed California's classwide arbitration rule would govern in this case.

to read such authority into the parties' arbitration agreement. Here, on the other hand, state law authorizes classwide arbitration. In the absence of an express agreement *not* to proceed to arbitration on a classwide basis, ordering the parties to arbitrate class claims as authorized by state law does not conflict with their contractual arrangement.

Blue Cross also contends that an order compelling classwide arbitration in this case would interfere with the parties' intentions; it asserts it bargained for individual arbitration conducted according to the rules of the American Arbitration Association (AAA), not this "hybrid" classwide arbitration requiring judicial intervention. This argument is premature. The only issue before this court is whether the *Keating* rule is preempted by the act. No order has been entered certifying a class. No order has been entered requiring classwide arbitration. (E.g., *Gainey* v. *Occidental Land Research* (1986) 186 Cal.App.3d 1051, 1054-1055 [231 Cal.Rptr. 249].) Whether classwide arbitration is appropriate in this matter is a question left to the trial court's discretion upon consideration of a variety of factors. (*Keating* v. *Superior Court, supra,* 31 Cal.3d at p. 613; *Izzi* v. *Mesquite Country Club, supra,* 186 Cal.App.3d at pp. 1314, 1322.) Moreover, under *Keating,* an arbitration agreement that is silent as to classwide arbitration is amenable to such procedure. Further, there has been no showing that an order compelling classwide arbitration would conflict with the agreement to proceed under AAA rules. Classwide arbitration has been held allowable in cases involving contracts to arbitrate under AAA rules, although no issue was raised as to any conflict. (See *Izzi* v. *Mesquite Country Club, supra,* 186 Cal.App.3d at pp. 1314, 1322; *Lewis* v. *Prudential-Bache Securities, Inc., supra,* 179 Cal.App.3d at pp. 945-946; cf. Code Civ. Proc., § 1281.3; *Garden Grove Community Church* v. *Pittsburgh-Des Moines Steel Co., supra,* 140 Cal.App.3d at pp. 257, 266 [consolidating arbitrations where agreements provided for arbitration under AAA rules]; *Conejo Valley Unified School Dist.* v. *William Blurock & Partners, Inc.* (1980) 111 Cal.App.3d 983, 989-993 [169 Cal.Rptr. 102] [consolidated arbitration pursuant to Code of Civil Procedure section 1281.3 allowable despite conflict with arbitrator selection provisions of AAA rules].) And even if a conflict exists between the AAA rules and classwide arbitration, the trial court may resolve the conflict. (Cf. Code Civ. Proc., § 1281.3; see *Keating* v. *Superior Court, supra,* 31 Cal.3d at pp. 612-613.) It is unlikely the AAA would refuse to abide by a court order for classwide arbitration. (See *Bock* v. *Drexel Burnham Lambert, Inc.* (1989) 143 Misc.2d 542 [541 N.Y.S.2d 172, 174] ["Apparently, the AAA recognizes that consolidation may be the subject of a court order . . . ."]; *Robinson* v. *Warner* (D.R.I. 1974) 370 F.Supp. 828, 829 ["[T]he AAA has indicated that it will abide by the Court's order in the event a consolidated arbitration is deemed appropriate."]; *Symphony Fab.*

*Corp.* v. *Bernson Silk Mills* (1963) 12 N.Y.2d 409 [240 N.Y.S.2d 23, 27, 190 N.E.2d 418] ["The rules of the American Arbitration Association do not forbid a consolidation or joint trial before the same arbitrator of independent proceedings."].) As discussed above, we conclude the trial court is not barred from issuing an order directing classwide arbitration when the agreement between the parties is silent and state decisional authority specifically provides for such arbitration. That the parties agreed to arbitration under AAA rules does not prevent a court from ordering arbitration on a classwide basis.

## G. *Conclusion*

Congress's purpose in enacting the act was simple—to abolish archaic law under which courts refused to enforce arbitration agreements, and to make voluntary agreements to arbitrate disputes specifically enforceable. To that end, the act created federal substantive law requiring that arbitration agreements be enforced. That federal substantive law applies in both state and federal courts. However, Congress did not intend to occupy the entire field of arbitration. Rather, the act preempts state law only to the extent it stands as an obstacle to the enforcement of contractual agreements to arbitrate. As explained in *Southland Corp.* v. *Keating, supra,* 465 U.S. at page 10 [104 S.Ct. at page 858], "Congress . . . withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." California decisional authority authorizing classwide arbitration *in appropriate cases*: is not preempted by the act; does not directly conflict with the act, which is silent as to classwide arbitration; does not stand as an obstacle to contractual arbitration; does not conflict with the act's purpose; does not require a judicial forum for resolving claims that the parties have agreed to arbitrate; and does not otherwise divert a case from arbitration. (*Perry* v. *Thomas, supra,* 482 U.S. at p. 491 [107 S.Ct. at p. 2526].) It does not invalidate the arbitration agreement or condition its enforceability on compliance with special rules not applicable to contracts generally. (*Doctor's Associates, Inc.* v. *Casarotto, supra,* 517 U.S. at p. 687 [116 S.Ct. at p. 1656].) It will not produce different outcomes on the merits based solely on whether the claim is asserted in state or federal court. (*Felder* v. *Casey* (1988) 487 U.S. 131, 138 [108 S.Ct. 2302, 2306-2307, 101 L.Ed.2d 123]; *Rosenthal* v. *Great Western Fin. Securities Corp., supra,* 14 Cal.4th at p. 409.) The *Keating* rule can facilitate the enforcement of arbitration agreements by making classwide arbitration available in appropriate cases. It can promote the expeditious resolution of cases by arbitration. In short, the federal decisional authority relied on by Blue Cross did not prevent the respondent court from permitting discovery as to whether

to allow classwide arbitration and later potentially include plaintiffs to be part of the class.

## IV. Disposition

The petition for a writ of mandate, prohibition, or other appropriate relief is denied. Plaintiffs, Elizabeth Farquhar and Laurie Winett, shall recover their costs incurred in connection with these extraordinary writ proceedings from defendants, Blue Cross of California and Wellpoint Health Networks, Inc.

Armstrong, J., and Godoy Perez, J., concurred.

Petitioners' application for review by the Supreme Court was denied January 13, 1999.