[No. B172662. Second Dist., Div. Five. Aug. 25, 2004.]

HENRY C. YUEN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.
GEMSTAR-TV GUIDE INTERNATIONAL, INC. et al., Real Parties in
Interest.

1134

COUNSEL

Arkin Kaplan, Stanley S. Arkin, Michelle A. Rice; Augustini & Wheeler, David Wheeler and Frederick A. Haist for Petitioners.

No appearance for Respondent.

Hogan & Hartson, Richard L. Stone, Anthony Basich, Neil R. O'Hanlon and Gary L. Urwin for Real Parties in Interest.

OPINION

ARMSTRONG, J.— ■ In *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [156 L.Ed.2d 414, 123 S.Ct. 2402], the Supreme Court has held that in arbitration proceedings governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), where an arbitration agreement is silent on the issue of whether class-wide relief is available, an arbitrator, not a court, should resolve the class arbitration issue. In this case, which is also governed by the FAA, we hold that the arbitrator should likewise decide whether the parties' arbitration agreement permits consolidation of two arbitration proceedings.

## FACTS AND PROCEDURAL HISTORY

Petitioner Henry Yuen is the founder and former president of Gemstar. Petitioner Elsie Ma Leung is Gemstar's former chief financial officer. Yuen developed the "VCR+" system that allows a viewer to videotape television programs using a five-digit code. TV Guide International acquired Gemstar, now known as "Gemstar-TV Guide International."[1] Upon the sale of Gemstar to TV Guide, Yuen and Leung became Gemstar employees. As part of the acquisition, Yuen and Leung each signed five written agreements, collectively referred to as the "Restructuring Agreements." Each agreement provided that the parties would submit any dispute involving the agreements to binding arbitration under the rules of the American Arbitration Association (AAA). The arbitration was to be held in the State of New York, but California law would apply.[2]

---

[1] For ease of reference, we refer to real parties in interest collectively as "Gemstar."

[2] The choice-of-law provision included in each agreement states: "This Agreement, the legal relations between the parties and any action, whether contractual or non-contractual, instituted by any party with respect to matters arising under or growing out of or in connection with or in respect of this Agreement, the relationship of the parties or the subject matter hereof shall be governed by and construed in accordance with the laws of the State of California applicable to contracts made and performed in such State and without regard to conflicts of law doctrines."

Restructuring Agreements signed by Yuen and Leung provided that they could be terminated for cause. Gemstar terminated both Yuen and Leung's employment on April 18, 2003, based on, among other things, alleged financial irregularities revealed in an accounting report.

On May 30, 2003, Yuen and Leung initiated separate AAA arbitration proceedings in New York. Their arbitration demands are substantially identical. On June 9, 2003, the AAA provided petitioners' counsel lists of potential arbitrators. Each list contained different names. On July 8, 2003, petitioners' counsel submitted petitioners' arbitrator selection list. Again, the list was different for each petitioner. On that same date, Gemstar filed a consolidated answer and counterclaim.

On July 31, 2003, the AAA submitted to counsel a three-member panel of arbitrators for each proceeding. There was a short delay in the Yuen proceeding after Yuen objected to the appointment of one of the arbitrators. The Leung panel was appointed on August 13, 2003, and a replacement arbitrator was selected for the Yuen panel on September 19, 2003.

Gemstar raised the matter of consolidation during conferences with the arbitrators in September 2003. The panels advised counsel that absent the parties' agreement or a court order, the AAA did not have jurisdiction to consolidate the proceedings. The AAA case manager confirmed the AAA's position in a letter to counsel dated October 22, 2003.

In early October 2003, both sides commenced discovery in the Leung proceeding. Additional matters, including Leung's motions to dismiss Gemstar's counterclaims and to advance attorney's fees, were submitted to the arbitration panel.

Yuen and Leung would not agree to consolidate the arbitrations. On November 3, 2003, Gemstar filed before respondent court a motion to consolidate the arbitrations pursuant to Code of Civil Procedure section 1281.3. That section provides that a court may order consolidation of separate arbitration proceedings where: "(1) Separate arbitration agreements or proceedings exist between the same parties; or one party is a party to a separate arbitration agreement or proceeding with a third party; and [¶] (2) The disputes arise from the same transactions or series of related transactions; and [¶] (3) There is common issue or issues or law or fact creating the possibility of conflicting rulings by more than one arbitrator or panel of arbitrators."

Respondent court granted the motion to consolidate in an order filed November 24, 2003. The court found it would be appropriate to consolidate the two arbitration proceedings because the facts alleged in the demands for

arbitration were virtually identical, many of the same witnesses would testify in both proceedings, and counsel were the same in both proceedings. The court found that "[s]eparate arbitrations would be costly, involve duplicative witnesses and might result in conflicting rulings by the respective AAA arbitration panels." The court found that the only remaining issue to be determined was whether Code of Civil Procedure section 1281.3 applied. Neither party had cited or discussed *Green Tree*, and respondent court did not refer to *Green Tree* in its order granting the motion to consolidate. Instead, the court based its analysis on California case law and earlier Supreme Court cases, particularly *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S 468 [103 L.Ed.2d 488, 109 S.Ct. 1248] (*Volt*), in which the court held that the FAA did not preclude a California court from applying California procedural statutes governing arbitration.

Petitioners challenged respondent court's order in a petition for writ of mandate filed January 26, 2004.[3]

## DISCUSSION

Congress enacted the FAA " 'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate . . . .' " (*Volt, supra,* 489 U.S. at p. 478.) The FAA's passage " 'was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered.' " (*Ibid.,* citing *Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 220 [84 L.Ed.2d 158, 105 S.Ct. 1238, 1242].)

Beyond ensuring that courts would enforce arbitration agreements covered by the FAA, Congress made "no federal policy favoring arbitration under a certain set of procedural rules . . . ." (*Volt, supra,* 489 U.S. at p. 476.) Prior to the Supreme Court's decision in *Green Tree,* California courts applied California statutes governing arbitration procedures to arbitrations covered by the FAA. (*Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297, 298 [9 Cal.Rptr.3d 190]; *Blue Cross of California v. Superior Court* (1998) 67 Cal.App.4th 42, 60 [78 Cal.Rptr.2d 779].)

Green Tree, a commercial lender, was the defendant in two class actions (*Bazzle* and *Lackey*) filed by disgruntled customers. The plaintiffs' loan agreements included a clause providing for arbitration of all contract-related disputes, but was silent on the issue of whether a class-wide arbitration was permissible. Green Tree moved to compel arbitration in both cases. The arbitrator who arbitrated both cases certified class arbitrations and ultimately ruled in favor of the plaintiffs in both cases.

---

[3] Petitioners also filed a notice of appeal of respondent court's order. We dismissed the appeal on May 5, 2004.

Among Green Tree's arguments on appeal was that the matters should not have proceeded as class arbitrations because the contract prohibited them. The South Carolina Supreme Court held that because the arbitration clauses were silent on the issue, state law applied. Interpreting South Carolina law, the court interpreted the agreements as permitting class arbitration. The Supreme Court granted certiorari to determine whether that ruling conflicted with the FAA.

■ The Supreme Court held that the issue of whether the parties' contract permitted class arbitration was a matter of state law contract interpretation that the arbitrator, not the court, should resolve. Although a court should decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy," issues that do not involve either "the validity of the arbitration clause nor its applicability to the underlying dispute between the parties" (*Green Tree, supra*, 539 U.S. at p. 452) are for the arbitrator, not the court, to resolve.

". . . [T]he question is not whether the parties wanted a judge or arbitrator to decide *whether they agreed to arbitrate a matter.* [Citation.] Rather, the relevant question here is what *kind of arbitration proceeding* the parties agreed to. That question does not concern a state statute or judicial procedures. [Citation.]. It concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question. Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions submitted to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide. [Citation.]" (*Green Tree, supra*, 539 U.S. at pp. 452–453.)

■ Thus, under the line drawn by the Supreme Court in *Green Tree,* the court decides whether the matter should be referred to arbitration, but "once a matter has been referred to arbitration, the court's involvement is strictly limited until the arbitration is completed." (*Finley v. Saturn of Roseville* (2004) 117 Cal.App.4th 1253, 1259 [12 Cal.Rptr.3d 561].)

The contracts in this case contain a California choice-of-law provision with an equally broad arbitration clause stating that "all disputes" relating to the contract shall be submitted to arbitration. *Green Tree* mandates that consolidation is such an issue.

Although it declined to resolve the consolidation issue at the time Gemstar informally requested consolidation, the AAA, in direct response to *Green Tree,* has recognized the impact of that case by adopting Supplementary Rules for Class Arbitration. Pursuant to these supplementary rules, effective

October 8, 2003, the AAA has agreed to administer demands for class arbitration where "(1) the underlying agreement specifies that disputes arising out of the parties' agreement shall be resolved by arbitration in accordance with any of the Association's rules, and (2) the agreement is silent with respect to class claims, consolidation or joinder of claims." (AAA, Rules, Supplementary Rules for Class Arbitration, <http://www.adr.org.> (as of Aug. 25, 2004).) Although these rules are specific to class arbitrations, and a request for consolidation may involve somewhat different considerations, the rules nonetheless provide an administrative mechanism by which the AAA may consider the consolidation issue raised here.

## DISPOSITION

The petition for writ of mandate is granted. A peremptory writ shall issue directing respondent court to vacate its order of November 24, 2003, granting defendant's motion to consolidate separate arbitrations, and enter a new and different order denying the motion without prejudice to submitting the matter to the AAA. The parties are to bear their own costs.

Grignon, Acting P. J., concurred.

**MOSK, J.,** Concurring.—

*Introduction*

This case involves a trial court order pursuant to Code of Civil Procedure section 1281.3 compelling consolidation of two arbitrations involving different claimants with identical employment agreements with the same defendant. The majority hold that a California trial court may not, under a state statute and over the objection of one of the parties, compel consolidation of two arbitrations that involve interstate commerce, and that the issue of consolidation should be left to the arbitrator.[1] The majority state that the case is governed by the Federal Arbitration Act, 9 U.S.C. section 1 et al. (FAA), and rely upon *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [156 L.Ed.2d 414, 123 S.Ct. 2402] (*Green Tree*), a case that dealt with a class arbitration rather than consolidation pursuant to a state statute.

I come to the same conclusion as the majority and explain why I do so. Interpreting the choice-of-law clauses in the agreements, I determine that the

---

[1] I assume the majority's reference to "submitting the matter to the AAA" (maj. opn, *ante,* at p. 1139) means to the American Arbitration Association arbitrator or arbitrators and not to the American Arbitration Association administrator.

parties did not intend to incorporate state arbitration law, and that is why the FAA applies. In the past, a majority of federal courts have held that the FAA did not authorize the consolidation of arbitrations absent the agreement of the parties. In *Green Tree, supra,* 539 U.S. 444, a plurality of the United States Supreme Court held that the arbitrator should determine whether an arbitration agreement subject to the FAA permitted or precluded class arbitration. The reasoning of *Green Tree* should result in the arbitrator or arbitrators deciding whether the arbitration agreements in this case permit consolidation and whether the arbitrations should be consolidated.

### Agreements

The agreements provide that any "dispute, controversy, claim or disagreement shall be resolved pursuant to confidential binding arbitration in New York, New York by a panel of three neutral arbitrators. The arbitration shall be conducted in accordance with the Commercial Rules of the American Arbitration Association then in effect." The agreements also state, "This Agreement, the legal relations between the parties and any action, whether contractual or non-contractual, instituted by any party with respect to matters arising under or growing out of or in connection with or in respect of this Agreement, the relationship of the parties or the subject matter hereof shall be governed by and construed in accordance with the laws of the State of California applicable to contracts made and performed in such State and without regard to conflicts of law doctrines."

### Applicable Laws

Code of Civil Procedure section 1281.3 specifically authorizes the trial court to consolidate arbitrations under circumstances that existed in this case. Any written agreement to arbitrate in a contract involving interstate commerce is subject to the FAA. The parties to such an agreement may, however, "make applicable state rules governing the conduct of arbitration," as long as state law is not preempted by the FAA. (*Volt Information Sciences, Inc. v. Board of Trustees* (1989) 489 U.S. 468, 476 [103 L.Ed.2d 488, 109 S.Ct. 1248].) The transactions here are in interstate commerce. Consequently, unless the parties agreed to apply state arbitration law that was not preempted, the FAA would apply.

### Federal Decisions Before Green Tree

A majority of federal appeal court decisions before *Green Tree, supra,* 539 U.S. 444, held that consolidation of arbitrations governed by the FAA may not be compelled absent the parties' express consent. (See 2 Oehmke, Commercial Arbitration (3d ed. 2004) § 61:7, pp. 61-12 to 61-14 (Oehmke);

1 Domke on Commercial Arbitration (3d ed. 2003) § 32:2, pp. 32-4–32-9; 21 Williston on Contracts (4th ed. 2001) § 57.88, p. 506; Jeydel, *Consolidation, Joinder and Class Actions: What Arbitrators and Courts May and May Not Do* (2003) 57-JAN Disp. Resol. J. 24; Shamoon & TenCate, *Absence of Consent Trumps Arbitral Economy: Consolidation of Arbitrations Under U.S. Law* (2001) 12 Am. Rev. Int'l Arb. 335, 336; Annot., Consolidation by Federal Courts of Arbitration Proceedings Brought Under Federal Arbitration Act (9 U.S.C.A. § 4) (1991) 104 A.L.R. Fed. 251.) Courts suggested when interstate commerce is involved, federal law does not preempt applicable state laws that permit compelling consolidation of arbitration proceedings. (See *New England Energy, Inc. v. Keystone Shipping Co.* (1st Cir. 1988) 855 F.2d 1; *Blue Cross of California v. Superior Court* (1998) 67 Cal.App.4th 42 [78 Cal.Rptr.2d 779] [no preemption of state law allowing class arbitrations].)

One authority has noted that "[t]he driving force behind the majority of federal circuits that deny consolidation (absent an explicit agreement of all parties) is the lack of an underlying contract among all parties to arbitrate in a single proceeding. The law of contract is the cornerstone of arbitration. For example, an agreement by parties A and B to arbitrate a dispute does not mean, *ipso facto,* that parties A and B have also agreed to arbitrate in the same room at the same time before the same arbitrators some previously unimagined issues of law and fact with parties X· and Y. [¶] Beyond arbitration's traditional carrots of relative speed and greater economy, privacy is the other leg in this troika of features. Parties A and B may not want their business affairs laundered in public (e.g., trade secrets, processes, procedures, methods, etc.) because forcing consolidated arbitrations may compromise business secrecy and confidentiality. [¶] Contractual silence on the issue of consolidation should not be construed as consent to consolidation. Parties' legitimate expectations about arbitration and all of its nuances should be valued, even absent an express prohibition on consolidation in an arbitration agreement. Parties have successfully opposed consolidation by proving it would undermine their stated expectations, especially regarding the arbitrator selection procedures." (Oehmke, *supra,* § 61:1, at p. 61-3.)

### Matters to Be Decided by Court or Arbitrator

A shift in the law could have been anticipated as a result of the United States Supreme Court decision in *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79 [154 L.Ed.2d 491, 123 S.Ct. 588] (*Howsam*). In that case, the court held that the application of a National Association of Securities Dealers (NASD) rule imposing a time limit on submission of disputes for arbitration was a matter for the arbitrator rather than the court. (*Id.* at p. 81.)

In reaching this conclusion, the court distinguished between a narrow category of "questions of arbitrability" that are to be resolved by the courts unless the parties have clearly agreed otherwise, and a broader category of other procedural issues that are presumptively reserved for the arbitrator's resolution. (*Id.* at pp. 83–84.) The narrow category includes disputes about "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." (*Id.* at p. 84.) The broader category, by contrast, includes " 'procedural' questions which grow out of the dispute and bear on its final disposition" and disputes about such defenses to arbitrability as waiver, estoppel, laches, and time limits. (*Id.* at pp. 84–85.) The court concluded that the NASD rule on time limits fell into this second, broader category of issues to be determined by an arbitrator. (*Id.* at pp. 85–86.)

After *Howsam, supra,* 537 U.S. 79, the court in *Shaw's Supermarkets, Inc. v. United Food and Commercial Workers Union, Local 791* (1st Cir. 2003) 321 F.3d 251, was faced with a United States District Court order requiring plaintiff to arbitrate grievances that had arisen under three separate collective bargaining agreements and to submit the issue of consolidation of the arbitrations to the arbitrators. Plaintiff contended on appeal that consolidation is an issue of substantive arbitrability and not a question of procedure, and that therefore the court rather than the arbitrator should decide the issue. The Court of Appeals disagreed, saying, "The issue before us is who should make the determination as to whether to consolidate the three grievances into a single arbitration: the arbitrator or a federal court. Since each of the three grievances is itself concededly arbitrable, we think the answer is clear. Under *Howsam v. Dean Witter Reynolds, Inc., supra,* 537 U.S. 79 [154 L.Ed.2d 491, 123 S.Ct. 588], this is a procedural matter for the arbitrator." (*Shaw's Supermarkets, Inc. v. United Food and Commercial Workers Union, Local 791, supra,* 321 F.3d at p. 254.)

### Green Tree

In *Green Tree, supra,* 539 U.S. 444, the United States Supreme Court dealt with class arbitration and not specifically with consolidation. In that case there was a state court decision ordering class arbitration under state law when the arbitration agreement was silent as to the subject of class arbitration. After concluding that the agreement did not expressly forbid class arbitration, a plurality of the court held that "[u]nder the terms of the parties' contracts, the question—whether the agreement forbids class arbitration—is for the arbitrator to decide." (*Green Tree, supra,* at p. 451.) The plurality said

that whether the parties'. agreement allowed consolidation was a question of contract interpretation that should be for the arbitrator, not the court, to decide. They referred to *Howsam, supra,* 537 U.S. 79, "finding for roughly similar reasons that the arbitrator should determine a certain procedural 'gateway matter.' " (*Green Tree, supra,* at p. 453.)

Justice Stevens, whose concurrence in the judgment in *Green Tree, supra,* 539 U.S. 444, provided the fifth vote, would have allowed the state court decision allowing the class arbitration to stand, but concurred because "[a]rguably the interpretation of the parties' agreement should have been made in the first instance by the arbitrator, rather than the court," and "because Justice BREYER's opinion [the plurality opinion] expresses a view of the case close to my own . . . ." (*Id.* at p. 455 (conc. opn. of Stevens, J.).) Thus, it appears that Justice Stevens agreed with the plurality that arbitrators should initially interpret the parties' agreement.

The plurality in *Green Tree, supra,* 539 U.S. at p. 452, said that the parties generally expect that a court will decide certain issues related to whether there is a valid and enforceable agreement to arbitrate. The plurality added, however, that "the relevant question here is what *kind of arbitration* proceeding the parties agreed to. That question does not concern a state statute or judicial procedures, [Citation.] It concerns contract interpretation and arbitration procedures." (*Green Tree, supra,* 539 U.S. at pp. 452–453.) In concluding that the arbitrator should determine whether or not the parties' arbitration agreement precluded class arbitration, the plurality in *Green Tree, supra,* 539 U.S. 444, relied on the parties' express agreement to arbitrate all disputes related to the contract. Even though, the plurality in *Green Tree* held that the arbitrator decides whether the agreement forbids a class action, they determined, at least initially, that the arbitration agreement in that case did not clearly forbid class arbitration.

Authorities following *Green Tree, supra,* 539 U.S. 444 seem to treat consolidation as comparable to class arbitration and therefore subject to *Green Tree.* (*Pedcor Management Company, Inc. v. Nations Personnel of Texas, Inc.* (5th Cir. 2003) 343 F.3d 355, 362 (*Pedcor*); *Birmingham News Company v. Horn* (2004) 901 So.2d 27.) A consolidation involves more than one pending arbitration proceeding. This creates problems in how to merge existing panels or panels to be selected in accordance with different agreements. But a class proceeding may involve many who are subject to arbitration clauses. Both consolidation and class arbitration are essentially procedural "gateway" matters (*Howsam, supra,* 537 U.S. at pp. 83–84; *Green Tree, supra,* at p. 453) that do not involve issues of arbitrability. Thus, for purposes of determining whether or not consolidation is permissible under the FAA, *Green Tree*'s reasoning is applicable.

It appears that the plurality opinion in *Green Tree, supra,* 539 U.S. 444 is not limited to agreements governed solely by the FAA, but there is some question as to whether or not arbitration agreements involving interstate commerce but governed *exclusively* by state arbitration law would be covered by the holding of the opinion. (See *Pedcor, supra,* 343 F.3d at pp. 360, 362, fn. 30; see also *Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297, 298, 303, fn. 2.) Because, as I discuss, the choice-of-law clauses in the parties' agreements do not reflect the intention to be bound by state law governing arbitrations, neither that question nor any issue of preemption need be addressed.

### *Intention of the Parties*

In determining whether the applicable choice-of-law clauses manifest an intention to be governed by California procedural rules applicable to arbitrations, courts employ the usual rules of contract interpretation. (See *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 722 [124 Cal.Rptr.2d 607].) In *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 58–59 [131 L.Ed.2d 76, 115 S.Ct. 1212] (*Mastrobuono*), the United States Supreme Court dealt with a clause that specified that the agreement "shall be governed by the laws of the State of New York." The court rejected the argument that this provision incorporated a state arbitration rule that precluded arbitrators, but not courts, from awarding punitive damages. The court concluded that state law contract principles suggested that the parties did not intend to incorporate this New York rule and that the choice-of-law provision did not include "special rules limiting the authority of arbitrators." (*Id.* at p. 63, fn. 9, p. 64).[2]

In *Mount Diablo Medical Center v. Health Net of California, Inc., supra,* 101 Cal.App.4th 711, the court interpreted a choice-of-law clause to incorporate California arbitration law. In that case, the choice-of-law clause was "broad, unqualified and all encompassing." (*Id.* at p. 722.) It provided that " 'the validity, construction, interpretation and enforcement of this Agreement' shall be governed by California law." (*Ibid.*) The court said, "The explicit reference to enforcement reasonably includes such matters as whether proceedings to enforce the agreement shall occur in court or before an arbitrator. Chapter 2 (in which § 1281.2 appears) of title 9 of part III of the California Code of Civil Procedure is captioned 'Enforcement of Arbitration

---

[2] *Volt Information Sciences, Inc. v. Board of Trustees, supra,* 489 U.S. 468, "does not stand for the proposition a general choice of law provision evidences in all cases an express intent to incorporate a state's arbitration rules into an arbitration agreement." (*Blue Cross of California v. Superior Court, supra,* 67 Cal.App.4th at pp. 62–63, fn. 8.)

Agreements.' An interpretation of the choice-of-law provision to exclude reference to this chapter would be strained at best." (*Ibid.*) The court distinguished *Mastrobuono, supra,* 514 U.S. 52, by noting that the choice-of-law clause there "provided only that it ' "shall be governed by the laws of the State of New York." ' " (*Id.* at p. 723; see also *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 962 [64 Cal.Rptr.2d 843, 938 P.2d 903] [choice-of-law clause incorporated California Code of Civil Procedure sections applicable to arbitrations]; Note, "An Unnecessary Choice of Law: *Volt, Mastrobuono,* and Federal Arbitration Act Preemption (2002) 115 Harv. L.Rev. 2250 [discusses application of choice-of-law clauses in cases subject to the FAA].)

In the instant case, the choice-of-law clauses do not refer to enforcement. Real parties in interest argue that the phrase, "[t]his Agreement, the legal relations between the parties and *any action*" (italics added) evidences an intent to incorporate California procedural law. Yet, the phrase "laws of the state of California applicable to contracts made and performed in such State and without regard to conflicts of law doctrines" modifies the entire clause and suggests that the clauses refer only to California substantive law.

The parties provided that the arbitration was to take place in New York. It seems unlikely that the parties intended to provide for the application of California procedural law in an arbitration taking place in New York. Also relevant is the fact that the agreements applicable in this case replaced agreements that contained the following clauses: "Any controversy or claim arising out of or relating to this Agreement, its enforcement or interpretation, or because of an alleged breach, default, or misrepresentation in connection with any of its provisions, shall be submitted to arbitration, to be held in Los Angeles County, California in accordance with California Code of Civil Procedure Sections 1282–1284.2." The change in the choice-of-law clauses in the new agreements, especially the omission of the references to Code of Civil Procedure sections 1282–1284.2, and the addition of the references to the Commercial Rules of the American Arbitration Association, suggest that the parties did not intend to incorporate California's procedural law for arbitration.

Thus, the most reasonable interpretation of the choice-of-law clauses is that the parties did not intend to be bound by California procedural law applicable to arbitration. Therefore, the FAA applies, rather than Code of Civil Procedure section 1281.3.

*Conclusion*

I concur in the conclusion of the majority. I note, however, that the "Commercial Rules of the American Arbitration Association then in effect"—the mechanism provided by the parties in their agreements—do not cover consolidation. The arbitrator or arbitrators must determine whether he, she or they have the authority to and should consolidate the proceedings.

On August 31, 2004, the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied December 1, 2004. Kennard, J., was of the opinion that the petition should be granted.