**Gia S. GIPSON, Plaintiff,**

v.

**CROSS COUNTRY BANK, Defendant.**

**No. CIV.A. 2:03CV269–A.**

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 28, 2005.

Christopher W. Weller, Capell Howard PC, Montgomery, AL, George C. Douglas, Jr., Birmingham, AL, James N. Walter, Jr., Capell Howard PC, Montgomery, AL, Jerry L. Thornton, Law Office of Jerry L. Thornton, Hayneville, AL, Wyndall A. Ivey, Capell Howard PC, Montgomery, AL, for Gla S. Gipson individually and on behalf of all other personal credit card holders of the Defendant who are similarly situated, Plaintiff.

Alan S. Kaplinsky, Ballard, Spahr, Andrews & Ingersoll, Arleigh P. Helfer, III, Ballard, Spahr, Andrews & Ingersoll, Mark J. Levin, Ballard, Spahr, Andrews & Ingersoll, Martin C. Bryce, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, Robert Howard Rutherford, Burr & Forman LLP, Birmingham, AL, for Cross Country Bank, Defendant.

### MEMORANDUM OPINION

ALBRITTON, Senior District Judge.

### I. *INTRODUCTION*

This cause is before the court on Defendant Cross Country Bank's ("Cross Country") Renewed Emergency Motion to Enforce Compliance with the Court's November 26, 2003 Order (Doc. # 47), Mo-

tion to Enjoin (Doc. # 51), and Revised Motion to Enjoin Plaintiff from Pursuing a Class Action Claim in Arbitration (Doc. # 56). The court held oral argument on the motions on January 6, 2005.

For the reasons to be discussed, Defendant's motions are due to be GRANTED.

## II. *FACTS AND PROCEDURAL PREDICATE*

On February 10, 2003, Plaintiff Gia S. Gipson commenced this action by filing a class action complaint in the Circuit Court of Lowndes County, Alabama, alleging that Cross Country violated a section of the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666(c), and regulations issued thereunder.[1] Defendant removed this action to this court on March 11, 2003 and filed a Motion to Compel Arbitration, to Stay Discovery, and to Dismiss Class Allegations as Moot. In opposition, Plaintiff asked the court to deny the motion because (1) the entire Cardholder Agreement was void *ab initio* because of the provision which allowed Cross Country to unilaterally change provisions, (2) the arbitration agreement itself was unenforceable because the waiver of class action claims limited statutory remedies and (3) the arbitration agreement itself was unenforceable because it was unconscionable.

In addressing these issues raised by the Plaintiff, this court issued a Memorandum Opinion and Order (Doc. # 34–35) on November 26, 2003. *See Gipson v. Cross Country Bank,* 294 F.Supp.2d 1251 (M.D.Ala.2003). This court held that the first issue should be determined by the arbitrator. As to the other two issues brought before this court by the Plaintiff, the court found that they were matters to be resolved by the court and held, as a matter of law, that the arbitration agreement was not unconscionable and did not limit statutory remedies by its prohibition of class claims. Therefore, the court found that the arbitration agreement was enforceable and, since the agreement prohibits class claims, this court dismissed the class allegations and ordered Plaintiff "to submit her individual claims against Cross Country to binding arbitration in accordance with the arbitration clause in the Cross Country Bank Credit Card Agreement." [2]

Plaintiff gave Notice of Appeal to the United States Court of Appeals for the Eleventh Circuit, but on May 25, 2004, the Court of Appeals dismissed the appeal for lack of appellate jurisdiction, pointing out that no interlocutory appeal had been certified. Arbitration proceedings were then begun.

On August 11, 2004, Defendant filed a Motion to Enforce Plaintiff's Compliance with the Court's November 26, 2003 Order and Memorandum Opinion Regarding Arbitration (Doc. # 42), alleging that the Plaintiff had violated the court's order by commencing an arbitration against the Defendant seeking class relief, rather than submitting only her individual claim as ordered. This court denied Defendant's motion without prejudice, finding the motion premature. This court explained that it had "no reason to speculate that the

1. The FCBA is one of the several discrete federal statutes included in the larger Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*

2. The pertinent contract clause states:
   If you or we elect to arbitrate a Claim: (1) neither you nor anyone else on your behalf can pursue that Claim in court or in an arbitration proceeding on a class-wide representation basis; and (2) Claims brought by or against one account holder (or joint account holders) may not be brought together with Claims brought by or against another account holder.
   Def. Mem. in Support of Motion to Compel (Doc. # 4), Exh. E.

arbitrator would ignore the court's decision" and "must assume that the arbitrator would enforce the class claim prohibition which the court has held to be enforceable." This court went on to state that "[i]f, for some reason, the arbitrator should fail to enforce the class action prohibition contained in the arbitration agreement, and should further make a class award, the Defendant will be free to then challenge that in this court as exceeding the arbitrator's powers, pursuant to 9 U.S.C. § 10."

On October 5, 2004, the arbitrator issued an order that concluded that "[s]ince the question of enforceability of the class prohibition, as well as any other questions which do not go to the issue of the validity of the arbitration clause, are mine to determine, the prior determination of those issues by the District Court is of no moment." Pl. Resp. Br., Exh. B. While the arbitrator acknowledged the principle that the authority of the arbitrator is limited by a referral order, the arbitrator went on to point out that the cases make clear that courts may not circumscribe the subject matter of the arbitration unless there is some question that is presumptively for the court to decide. *Id.* The arbitrator saw "no legal distinction between a clause limiting remedies and one limiting available procedural tools [that is, one limiting class-wide arbitration], for purposes of deciding whether a gateway matter is involved." *Id.* In concluding that this court misapplied the law, the arbitrator "assume[d] that, had the District Court been cited *Anders [v. Hometown Mortgage Services, Incorporated,* 346 F.3d 1024 (11th Cir.2003) ], it would have reached the same conclusion I have." *Id.*

On December 8, 2004, Cross Country filed a Renewed Emergency Motion to Enforce Compliance with the Court's November 26, 2003 Order. The Defendant requested relief because the Plaintiff not only submitted her individual claim to arbitration, as directed by this court, but also requested class action treatment, and the arbitrator's October 5, 2004 Order held that the determination of whether the express "no-class action" provision is valid and enforceable was a matter to be decided by the arbitrator. Furthermore, JAMS, which governs the actions of its arbitrators, one of whom is the arbitrator with this case, publicly announced that its arbitrators will not enforce class action preclusion clauses. *See* Def. Br. Exh. J.

On December 16, 2004, this court ordered the case restored to the court's active docket, directed the parties to file with the court copies of all briefs filed by them with the arbitrator, and set a hearing in this case for January 6, 2005. The court found, tentatively, subject to briefing and oral argument, that both as a matter of law and as a matter of judicial economy, the question as to whether this arbitration should proceed on an individual basis as ordered by the court, or whether the arbitrator was free to allow Plaintiff to proceed on a class-wide basis, should be determined at this time in a manner reviewable by the Eleventh Circuit Court of Appeals.[3]

On December 20 and 23, 2004, respectively, Defendant filed a Motion to Enjoin and a Revised Motion to Enjoin Plaintiff from Pursuing a Class Action Claim in Arbitration. These motions sought an injunction under section 4 of the Federal Arbitration Act ("FAA") to specifically compel arbitration in accordance with the express terms of the arbitration agreement, prohibiting class arbitration.

### III. DISCUSSION

Defendant's motions present the question as to whether the validity and enforce-

---

3. The arbitrator stayed the arbitration pending this court's ruling on Cross Country's renewed emergency motion. *See* Pl. Resp. Br., Exh. A.

ability under the FAA of an express 'no-class action' clause in an arbitration agreement is an issue to be determined by the courts or by individual arbitrators. Before discussing the merits of this issue, this court must first address Defendant's preclusion arguments.

## A. Preclusion

■ Defendant disputes Plaintiff's contention that the arbitrator, not this court, should have decided the validity and enforceability of the class action waiver. Defendant contends that Plaintiff is not only wrong, but also that the theories of waiver and judicial estoppel preclude her from making that argument. Specifically, Defendant argues that Plaintiff asked this court to rule on the validity of the class action waiver on two separate occasions. Defendant contends that in Plaintiff's earlier briefings, Gipson did not argue that an arbitrator should have determined the validity of the class action waiver clause; rather, it was only after this court's adverse ruling on the conscionability of the class action waiver clause that Plaintiff then argued that it was improper for the court to rule on the issue.

### 1. Waiver

■ A party may waive the right to arbitrate by its conduct, such as invoking "litigation machinery" prior to seeking arbitration and acting inconsistently with a right to arbitrate. *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 677, 112 L.Ed.2d 669 (1991). "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party .... Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbi-

tration was designed to alleviate." *Morewitz v. West of Eng. Ship Owners Mut. Protection & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir.1995), *cert. denied*, 516 U.S. 1114, 116 S.Ct. 915, 133 L.Ed.2d 845 (1996).

■ This court finds that Plaintiff did not participate in litigation "to a point inconsistent with an intent to arbitrate." *Id.* In *Anders*, the Eleventh Circuit Court of Appeals alludes to the fact that cases where "parties are litigating whether or not they should be litigating" are not uncommon. 346 F.3d at 1026. Plaintiff's initial court filings on the matter of the class action waiver clause were in response to Defendant's removal and motion to compel arbitration. A party has waived its right to arbitrate if, "under the totality of the circumstances, the ... party has acted inconsistently with the arbitration right, [citation omitted] and, in so acting, has in some way prejudiced the other party [citation omitted]." *Id.* Considering the totality of the circumstances, Plaintiff's participation in litigation was not to a point inconsistent with an intent to arbitrate, but rather, evidenced an intent to ensure Plaintiff would be able to effectively vindicate her statutory rights and general federal policies, whether in court or in any such arbitration.

### 2. Judicial Estoppel

■■ " 'Judicial estoppel is an equitable concept invoked at a court's discretion' and designed 'to prevent the perversion of the judicial process.' " *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004) (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir.2002)). While "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *New Hampshire v. Maine*, 532 U.S. 742, 750,

121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citations omitted), courts in the Eleventh Circuit must generally consider two factors. *See Salomon Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir.2001). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* (citations omitted).

■ In the instant case, the court finds that Defendant fails to show that Plaintiff's arguments regarding which entity is entitled to decide the validity of the express class action waiver clause were designed to make a mockery of the judicial system. The nature of this issue is on the forefront of jurisprudence respecting the relationship between courts and arbitrators, and the issue of the arbitrator's role in interpreting the express class action waiver was not directly before this court prior to Defendant's renewed motion for emergency relief. As the arbitrator noted, Plaintiff "has not really 'changed positions'" respecting her belief as to the invalidity of the arbitration clause, but rather now argues that the arbitrator is the proper decision maker in light of *Anders. See* Def. Br., Exh. I.

Defendant argues that Plaintiff failed to preserve any argument that her objections should be determined in arbitration after Plaintiff asked this court twice to rule on the validity of the express class action waiver. Nonetheless, the issue now before the court was only fully developed after the arbitrator requested briefing on the implications of this court's November 26, 2003 Memorandum Opinion and Order directing the Plaintiff to arbitrate her individual claims in view of the Eleventh Circuit Court of Appeals' decision in *Anders,* a case that was decided after the parties briefed the original motion that was pending in this court. As a result, Plaintiff's contentions regarding the role of the arbitrator in interpreting the express class action waiver clause are less the result of calculated inconsistency and more aptly characterized as the result of the arbitrator's briefing request that inquired to what extent, if at all, the orders of this court preclude consideration by the arbitrator of issues raised by the Claimant in the Demand for Arbitration. *See id.*

## B. The Validity and Enforceability of an Express Class Action Waiver Clause as a Gateway Issue Determined by the Court

■ This court stated earlier that the question before it is the extent to which a court, rather than an arbitrator, may determine the validity and enforceability of an express class action waiver clause in an arbitration agreement. The parties both discuss extensively the Supreme Court's reasoning in *Green Tree Financial Corporation v. Bazzle,* 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (*"Bazzle"*) and the Eleventh Circuit Court of Appeals' decision in *Anders.* The implications of *Bazzle* and *Anders* as they relate to the arbitration agreement in this case are by no means well-settled. In reaching a decision on whether this court can and should enjoin the arbitration from proceeding on a class-wide basis, a discussion of the distinguishing characteristics of each case is necessary.

### 1. *Bazzle*

In *Bazzle,* two sets of customers filed separate actions in South Carolina state court concerning certain contracts with Green Tree Financial Corporation ("Green Tree") that included arbitration clauses governed by the FAA. 539 U.S. at 447–48, 123 S.Ct. 2402. Various customers independently moved for class certification and Green Tree sought to stay the court proceedings and compel arbitration. *Id.* at

449, 123 S.Ct. 2402. After the trial court certified a class and compelled arbitration, the arbitrator awarded class damages and attorneys' fees. *Id.* The trial court confirmed the awards and Green Tree appealed, arguing that the class arbitration was legally impermissible. *Id.* The South Carolina Supreme Court withdrew the cases from the appeals court, assumed jurisdiction, and consolidated the proceedings. *Id.* at 450, 123 S.Ct. 2402. The South Carolina Supreme Court held that the contracts were silent with respect to class arbitration, that the contracts consequently authorized class arbitration, and that the arbitration had properly taken that form. *Id.*

On review, four justices of the United States Supreme Court found that the dispute over whether the arbitration contract forbade the use of class arbitration procedures was a dispute relating to the contract and the resulting relationships. *Id.* at 452, 123 S.Ct. 2402 (plurality). Therefore, a plurality of the Court held, since the parties agreed to submit to the arbitrator "all disputes, claims, or controversies arising from or relating to the contract or the relationships that resulted from the contract," the question of whether the agreement forbade class arbitration was for the arbitrator to decide. *Id.* at 451–52, 123 S.Ct. 2402.[4]

The plurality noted that "[i]n certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clea[r] and unmistakeabl[e]' evidence to the contrary)." *Id.* at 452, 123 S.Ct. 2402 (citing *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The *Bazzle* plurality went on to explain that "[t]hese limited instances typically involve matters of the kind that 'contracting parties would likely have expected a court' to decide." *Id.* (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). The *Bazzle* plurality referred to these court matters as "gateway matters," such as "whether the parties have a valid arbitration agreement at all" or whether an arbitration clause in a concededly binding contract applies to a certain type of controversy. *Id.*

The plurality, however, went on to explicitly state that "[t]he question here—*whether* the contracts forbid class arbitration—does not fall into this narrow exception" because "[i]t concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." *Id.* (emphasis added). Ultimately, the judgment of the South Carolina Supreme Court was vacated, and the case was remanded so that the question of whether the arbitration contracts forbade class arbitration could be resolved in arbitration. *Id.*[5]

---

**4.** In a separate concurrence in the judgment and dissent in part, Justice Stevens concluded that in order to have a controlling judgment of the Court, and because the plurality's opinion expressed a view of the case close to his own, he concurred in the judgment. *Bazzle*, 539 U.S. at 455, 123 S.Ct. 2402 (Stevens, J., concurring in the judgment and dissenting in part). In doing so, Justice Stevens noted that "the Supreme Court of South Carolina has held as a matter of state law that class-action arbitrations are permissible if not prohibited by the applicable arbitration agreement, and

that *the agreement between these parties is silent on the issue.*" *Id.* (emphasis added). It is only after this explanation that Justice Stevens states "[a]rguably the interpretation of the parties' agreement should have been made in the first instance by the arbitrator, rather than the court." *Id.* (citation omitted).

**5.** The Chief Justice dissented, joined by two other justices, arguing that Green Tree was so clearly correct in its assertion that the contracts do not allow class certification, that the determination is one for the courts, not the arbitrator. *Id.* at 455–60, 123 S.Ct. 2402

■ Because the *Bazzle* plurality decision was premised, in part, on a contract in which parties did not expressly prohibit class actions by their agreement, this court reads *Bazzle* to stand for the proposition that, when an arbitration provision does not expressly permit or prohibit class-wide arbitration, the decision as to *"whether* the contract[ ] forbid[s] class arbitration," in the words of the plurality, is for the arbitrator, not the court. *Id.*

This court is not alone in noting the distinction between an arbitration agreement with an express class action prohibition versus one that is silent or ambiguous with respect to class actions. *See Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Tex., Inc.* ("*Pedcor*"), 343 F.3d 355, 359–60 (5th Cir.2003) (noting that "although [*Bazzle*] held that whether an arbitration agreement forbids class arbitration is a question for the arbitrator to decide, the Court nevertheless made the initial determination that the language of the arbitration agreement *did not clearly forbid* class arbitration.") (emphasis in original); *Johnson v. Long John Silver's Rests., Inc.,* 320 F.Supp.2d 656, 668 (M.D.Tenn.2004) (finding that "[a] recent Supreme Court case specifically states that the arbitrator, not the court, should determine whether class arbitration is permitted by *an ambiguous contract."*) (emphasis added); *Bellevue Drug Co. v.*

*Advance PCS,* 333 F.Supp.2d 318, 330 (E.D.Pa.2004) [6]; *In re Universal Serv. Fund . Tel. Billing Practices Litigation,* 300 F.Supp.2d 1107, 1126–27 (D.Kan.2003) (holding that "Sprint's [contract] . . . does not by its terms ban class-wide arbitration. *Rather, it is silent on this issue. Under these circumstances,* the availability of class-wide arbitration is an issue that must be decided by the arbitrator in the first instance.") (emphasis added); *Walker v. Ryan's Family Steak Houses, Inc.,* 289 F.Supp.2d 916, 926 (M.D.Tenn.2003) (noting that *Bazzle* was a case in which the arbitration agreement did not discuss the availability of class arbitration); *Yuen v. Superior Court,* 121 Cal.App.4th 1133, 18 Cal.Rptr.3d 127, 134 (2004) (summarizing that "[e]ven though[ ] the plurality in [*Bazzle* ] held that the arbitrator decides whether the agreement forbids a class action, *they determined, at least initially, that the arbitration agreement in that case did not clearly forbid class arbitration."*) (emphasis added); *Bess v. DirecTV, Inc.,* 351 Ill.App.3d 1148, 287 Ill.Dec. 52, 815 N.E.2d 455, 459 (2004) (noting that the arbitration agreements in both *Bazzle* and *Bess* were silent about whether class arbitration was forbidden or allowed and that it was only after the Supreme Court determined that the agreement did not expressly forbid class arbitration that the Court then ruled that whether the agreement

(Rehnquist, C.J., dissenting) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 53–54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)).

6. The *Bellevue Drug Company v. Advance PCS* court stated that:

[b]ecause the contract provisions referred to by plaintiffs are *completely silent* . . . it would be wholly speculative at this point for the court to proceed under the assumption that an arbitrator would interpret [the contract] in such a way as to preclude the

remedies provided for under the antitrust laws. [footnote omitted] *See* [*Bazzle* ], 123 S.Ct. at 2404, 2406–07 (finding that *because the literal terms of contract were 'silent,'* issue concerned contract interpretation and remained for the arbitrator to decide); *PacifiCare [Health Sys., Inc. v. Book],* 538 U.S. [401,] 406–07, 123 S.Ct. 1531, 155 L.Ed.2d 578 [ (2003) ] (finding that it was not for the court to resolve *ambiguous provisions* in the first instance based on 'mere speculation' that an arbitrator might interpret these arbitration agreements in a manner that casts their enforceability into doubt.).

333 F.Supp.2d at 330 (emphases added).

forbids class arbitration is for the arbitrator to decide); *Flynn v. Labor Ready, Inc.*, 6 A.D.3d 492, 494, 775 N.Y.S.2d 357 (2d Dep't 2004) (reasoning that, like *Bazzle*, "[t]he agreements were silent as to whether class-action arbitration was permissible. Accordingly, the question of whether these claims may be submitted to arbitration as a class action is for the arbitrator to decide"); *Garcia v. DIRECTV, Inc.*, 115 Cal.App.4th 297, 9 Cal. Rptr.3d 190, 194 n. 1 (2004) (stating that "[i]t is undisputed that neither the [*Bazzle*] agreement nor DIRECTV's agreement clearly forbids class arbitration, a preliminary analysis that *might* (but then again might not) otherwise be made by the court, not the arbitrator.") (emphasis in original).

In fact, numerous post-*Bazzle* courts have decided whether to enforce an express class action waiver clause in an arbitration agreement that is alleged to be unconscionable. *See, e.g., Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174–75 (5th Cir.2004) (upholding the validity of an express class action waiver alleged to be unconscionable under Louisiana law); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir.2004) (rejecting the argument that the arbitration clause prohibiting plaintiffs from proceeding collectively was unconscionable under Texas law); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir.2003) (holding that "[t]he Arbitration Agreement at issue here explicitly precludes the Livingstons from bringing class claims or pursuing 'class action arbitration,' so we are therefore 'obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis'") (citation omitted).

The contract before this court now is distinguishable from the one in *Bazzle*, because here the clause prohibiting class arbitration is clear, that is, there is no issue of contract interpretation as there was in *Bazzle*. Put another way, the Court plurality in *Bazzle* felt that the answer as to whether the contracts allowed or prohibited class arbitration was "not completely obvious," hence contract interpretation, which is the realm of the arbitrator, would be necessary. 539 U.S. at 451, 123 S.Ct. 2402. Here, however, an arbitrator need not interpret the contract's class action waiver clause, because the contract expressly prohibits class arbitration, thereby concerning "the validity of the arbitration clause," which the *Bazzle* plurality indicated could fall under the narrow exception concerning matters "contracting parties would likely have expected a court" to decide. *See id.* at 452, 123 S.Ct. 2402 (citing *Howsam*, 537 U.S. at 83, 123 S.Ct. 588). There is no need for anyone to decide "whether the contract[] forbid[s] class arbitration." *See id.* It expressly and unequivocally does. The only issue is whether such a clear prohibition is valid and enforceable, and this court has held that it is.

Plaintiff cites a Fifth Circuit case that grappled with the implications of *Bazzle* with respect to this very issue. In *Pedcor*, the Fifth Circuit ruminated in dicta that the *Bazzle* plurality seems to make a first initial inquiry, whether the contract expressly forbade class actions, as a court, a step seemingly incongruous with the blanket pronouncement that the decision as to whether the contract prohibits class actions is the realm of the arbitrator. *See* 343 F.3d at 359–60.[7] The *Pedcor* court

---

7. The Fifth Circuit pondered:

The [Supreme] Court stated that it "must deal ... at the outset" with the argument that the contracts forbid class arbitration, "for if it is right, then the South Carolina court's holding [that the contracts were si-

merely suggested that there would be no need for a court to decide *"whether* an arbitration agreement clearly forbids class arbitration" when the agreement clearly did. *Id.* (emphasis added). The *Pedcor* court found the provision in the contract at issue to be unclear and for the arbitrator to interpret, but in no way suggested that an arbitrator would be free to "interpret" an agreement expressly forbidding class arbitration to be an agreement allowing it. And, as previously noted, the Fifth Circuit has upheld the validity of class action prohibitions in two cases since *Pedcor.* *See Iberia Credit Bureau, Inc.,* 379 F.3d at 174–75; *Carter,* 362 F.3d at 301.

A federal district court in Pennsylvania was even more on point when it stated that it was "not persuaded that the issue of unconscionability should be decided by the arbitrator. Unlike arguments against enforcement of contractual agreements supported on waiver or public policy grounds, the defense of unconscionability strikes at the heart of the question of whether or not the parties had a 'valid arbitration agreement at all.'" *Bellevue,* 333 F.Supp.2d 318, 332 n. 6 (citing *Bazzle,* 539 U.S. at 452, 123 S.Ct. 2402).

The *Bellevue Drug Company v. Advance PCS* court went on to state that "the Supreme Court's decision in *Green Tree I* ... and recent decisions from the Third Circuit [citations omitted] ..., persuade the Court that the plaintiffs' unconscionability argument should be addressed here as a "gateway" issue touching upon the

validity of the arbitration agreement itself." *Id.*

Because the arbitration agreement in the instant case expressly prohibits class actions, this court finds that the contract here is not sufficiently analogous to *Bazzle's* contract to mandate that this court defer to the arbitrator's interpretation of the arbitration agreement regarding whether it forbids or allows class arbitration. In the instant case there is simply no room for interpretation; it is forbidden.

### 2. *Anders*

The parties also discuss *Anders* extensively. There, a residential borrower sued two mortgage companies, alleging that they violated the Real Estate Settlement Procedures Act and TILA. *Anders,* 346 F.3d at 1027. The district court entered a default judgment against one of the mortgage companies. *Id.* The other mortgage company filed a motion to compel arbitration based on the parties' agreement executed at the closing. *Id.* The district court granted the motion and the borrower appealed. *Id.* The Eleventh Circuit Court of Appeals held that the agreement, which provided for the arbitration of any and all disputes, was broad enough to cover the dispute. *Id.* at 1028. Also, given that the mortgage company was willing to bear the costs of arbitration that the borrower was unable to afford, it followed that the borrower did not demonstrate that arbitration would be prohibitively expensive. *Id.* at 1028–29. Additionally, the court rejected

lent] is flawed on its own terms." [footnote omitted]. This preliminary analysis appears to be in response to the dissent's (and petitioner's) argument to the contrary. But even if the South Carolina court's holding is "flawed on its own terms," *it is unclear why the Court would explore this issue in the first place if its ultimate conclusion was that a court, regardless of whether its interpretation of the law is right or wrong, is simply the*

*wrong decision-maker.* That is, if the arbitration provision clearly did forbid class arbitration, then the arbitrators could—and under [*Bazzle* ] should—make this call without any prior analysis by a court. In short, under the Court's holding, it should not be necessary for a court to decide initially whether an arbitration agreement clearly forbids class arbitration.
*Pedcor,* 343 F.3d at 359–60 (emphasis added).

the borrower's argument that the arbitration agreement could not be enforced because it limited remedies otherwise available to him under the federal statutes upon which his claims were based. *Id.* at 1029–32. Also, the court held that it was for the arbitrators, not a court, to decide the validity of any contractual restrictions on the borrower's remedies. *Id.* at 1032–33. Ultimately, the district court's decision to send the case to arbitration was affirmed. *Id.* at 1033.

In the instant case, as the court noted in its earlier November 26, 2003 Memorandum Opinion and Order, Cross Country's arbitration clause does not limit any of the substantive remedies that would otherwise be available to the Plaintiff under 15 U.S.C. § 1640. *See Gipson,* 294 F.Supp.2d at 1260. The class action waiver clause at issue here is not a restriction of remedies; instead, it concerns whether Gipson can assert claims for remedies for others.[8] Stated simply, the express class action waiver does not concern the remedies the Plaintiff could be entitled to, as was the case in *Anders,* but rather, the nature of the forum in which Plaintiff (or multiple plaintiffs) may assert claims for such remedies. *See Musnick v. King Motor Co. of Ft. Lauderdale,* 325 F.3d 1255, 1261 (11th Cir.2003) (holding "[a] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided.").

Therefore, this court is guided less by the language of *Anders* and more by the decisional framework found in *Bazzle.* The threshold inquiry made in *Bazzle* was whether the arbitration agreement was ambiguous or not. *See* 539 U.S. at 450, 123 S.Ct. 2402 (plurality) (stating that "[t]he South Carolina Supreme Court's de-

termination that the contracts are silent in respect to class arbitration raises a preliminary question. . . . And we must deal with that argument at the outset, for if it is right, then the South Carolina court's holding is flawed on its own terms."); *id.* at 455–56, 123 S.Ct. 2402 (Rehnquist, C.J., dissenting) (stating that because the dissent holds that the contracts unambiguously do not by their terms permit class-action arbitration, he "would reverse because this determination is one for the courts, not for the arbitrator . . . ."). Only after having found the contract unclear did the plurality then determine that the arbitrator should make the initial contract interpretation. *Bazzle,* 539 U.S. at 451, 123 S.Ct. 2402. Because this case involves an arbitration agreement containing an express class action waiver, the facts of *Bazzle* are distinguishable, but the decisional framework that many jurists extrapolate from the opinion helps guide this court. Ultimately, this court finds that it properly ruled on the express class action waiver clause's validity and enforceability, and an arbitrator is not free to ignore that determination.

### 3. This court's November 26, 2003 Memorandum Opinion and Order is Binding on the Parties in the Arbitration

The FAA requires courts to enforce arbitration agreements in accordance with their terms. 9 U.S.C. § 4. In *Volt Information Sciences, Incorporated v. Stanford University,* the Supreme Court held that parties may "specify by contract the rules under which that arbitration will be conducted," and that "enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA

---

8. As discussed in this Court's November 26, 2003 Memorandum Opinion and Order, the FCBA does not create a statutory right to a class action. *See Gipson,* 294 F.Supp.2d at 1260.

...." 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

Here, there is a clear prohibition that is enforceable as a matter of law, without a need for arbitrator interpretation. The issue is not whether the provision can be interpreted as prohibiting class actions, but rather, whether the express class action prohibition is legally valid and enforceable. *Howsam,* 537 U.S. at 84, 123 S.Ct. 588 (holding that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."). This court decides now as a matter of law that the parties' class action waiver clause is valid and enforceable and may not be severed.

■ "Arbitrators ... cannot inflate their authority beyond the boundaries of the ... court's order of reference ... [because they] derive ... their powers from the ... court's order." *Continental Group v. NPS Communications, Inc.,* 873 F.2d 613, 618 (2d Cir.1989); *see also Coady v. Ashcraft & Gerel,* 223 F.3d 1, 9 (1st Cir.2000) (stating "the district court's initial order of reference determined that the employment agreement authorized arbitration only of questions of ambiguity or interpretation of the contract and that questions of breach of contract were not within the scope of the clause. [citation omitted]. The arbitrators were without power to enlarge upon that ruling."). This court was and is required, pursuant to 9 U.S.C. § 4, to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." The agreement in question specifically provides that "neither [the Plaintiff] nor anyone else on [her] behalf can pursue [her] claim ... in an arbitration proceeding on a class-wide basis ...." Def. Mem. in Support of Motion to Compel, Exh. E. Therefore, Gia S. Gipson and Cross Country Bank have been, and will again be, ordered to pursue arbitration in accordance with the arbitration agreement, including the prohibition against class actions.

**4. Injunctive relief**

This court entered its November 26, 2003 Memorandum Opinion and Order with the intention that the arbitration be carried out in accordance with the arbitration agreement. Today's Memorandum Opinion and Order does not change the intent of the court's earlier order, but to the extent it was not clear, this court will strictly enjoin the Plaintiff from pursuing her claims in an arbitration proceeding on a class-wide basis. *See Sterling Fin. Inv. Group. Inc. v. Hammer,* 393 F.3d 1223, 1224–26 (11th Cir.2004) (holding that "[d]espite [the Defendant–Appellant's] assertion that a federal court may only review an arbitration proceeding after it has concluded, the plain language of the statute indicates otherwise. We therefore hold that a federal district court, pursuant to 9 U.S.C. § 4, has jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrators.").

**IV. CONCLUSION**

For the reasons stated above, as well as the reasons set out in the court's Memorandum Opinion and Order of November 26, 2003, the court concludes that:

1. It is for the court, and not an arbitrator, to determine whether an express prohibition against class action arbitration contained in an arbitration agreement is valid and enforceable.

2. The express prohibition against class action arbitration involved in this case is valid and will be enforced by this court.

3. The Defendant's Renewed Emergency Motion to Enforce Compliance with the Court's November 26, 2003 Order and Defendant's Motion and Revised Motion to Enjoin Plaintiff From Pursuing a Class Action Claim in Arbitration are due to be Granted to the extent stated herein.

A separate Order will be entered in accordance with this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion entered on this day, it is ORDERED as follows:

1) Defendant's Renewed Emergency Motion to Enforce Compliance with the Court's November 26, 2003 Order is GRANTED to the extent of this Order.

2) Defendant's Motion and Revised Motion to Enjoin Plaintiff from Pursuing a Class Action Claim in Arbitration are GRANTED.

3) Plaintiff is ORDERED to submit her individual claims against Cross Country Bank to binding arbitration in accordance with the arbitration clause in the Cross Country Bank Credit Card Agreement.

4) The Plaintiff, Gia S. Gipson, is strictly ENJOINED from pursuing any of her claims against Cross Country Bank on a class-wide basis in the pending arbitration or in any other court or arbitral forum, as expressly provided in the Cross County Bank Credit Card Agreement.

5) The Plaintiff is DIRECTED to promptly furnish a copy of this Order to the arbitrator in the pending proceedings, JAMS Arbitration No. 062104A.

6) This case is STAYED pending arbitration, pursuant to 9 U.S.C. § 3.

7) The parties are DIRECTED to file a notice with the court when arbitration has been concluded.